The Kansas Zinc Mining and Smelting Company
v. Emma A. Brown.

No. 393.

Injury to Realty—*Measure of Damages.* In an action to recover damages for injuries to real property, the petition specified the number and value of certain fruit and ornamental trees claimed to have been destroyed by gases generated by and permitted to escape from defendant's zinc-smelting plant, and also alleged other damages to the amount of $3600 to the property. No testimony as to the alleged value of the trees was introduced, and the court, over the objections of the defendant, admitted testimony as to the value of the premises before and after the injury complained of, and instructed the jury that the measure of the plaintiff's damage was the difference between the value of the plaintiff's property before and after the alleged injury thereto. *Held,* not error.

Error from Crawford district court ; Walter L. Simons, judge. Opinion filed May 17, 1899. Affirmed.

*Morris Cliggitt*, for plaintiff in error.

*Fuller & Randolph*, for defendant in error.

The opinion of the court was delivered by

MILTON, J.: In this action the defendant in error sought to recover judgment against plaintiff in error in the sum of $10,000 as damages for injury to real property and the trees, grass and other improvements thereon, caused by the smoke, noxious odors and poisonous gases which escaped from the smelting plant of plaintiff in error.   The petition alleged that the poisonous gases from the smelter were carried by the prevailing winds over and upon plaintiff's premises, and that thereby seventy-two fruit-trees, of the value of fifty dollars each, and 300 shade and ornamental trees, of the value of ten dollars each, a vineyard, shrubbery, grasses and other vegetation were greatly injured or entirely destroyed.   It was also alleged that the property, which consisted of 22½ acres of well-improved land near the corporate limits of the city of Girard, was rendered undesirable for a residence by reason of the noxious gases, and that the property, as a whole, was damaged in the sum of $10,000.   The smelting company answered with a general denial and an allegation that the smelters were located in their present place under an agreement with Loren Brown, the husband of the defendant in error, and that the defendant in error acquired title to the land from Loren Brown by quitclaim deed, and with full notice and knowledge of the said agreement.   The reply contained a general denial only. The cause was tried at the March, 1896, term of the district court of Crawford county, resulting in a verdict and judgment in favor of the plaintiff below for $1000.

From the testimony the following facts appear: The smelter was located, in the fall of 1893, at a point about seventy-five rods west of south of plaintiff's premises. The prevailing wind in that locality is from a southerly direction in the spring and summer. Prior to 1894, the plaintiff's land was exceptionally desirable as a place of residence. The improvements consisted of a two-story dwelling-house, a large barn, a good orchard of apple and other fruit-trees, a vineyard, shade-trees, and shrubbery. The larger part of the land was set to blue-grass and clover and was used for pasture. The premises were well kept. In the spring and summer of 1894, the trees, shrubbery and grass showed unmistakable signs of injury. The grape-vines died, as did also many of the apple trees. The trees that survived bore no fruit, and the pasture failed. Witnesses for the plaintiff testified as to the value of the property before the location of the smelter and at the time of the trial. There was no expert testimony as to the chemical properties of the gases from the smelter, and no direct proof that such gases were capable of destroying vegetation. The testimony as to the alleged agreement between Loren Brown and the smelting company was conflicting. The inference drawn by the jury that the gases from the smelter occasioned the damage of which the plaintiff complained appears to us to be irresistible. In this respect the verdict is amply supported by the evidence.

Counsel for plaintiff in error contends that the court erred in the admission of testimony as to the diminished value of the real property as a whole, and insists that the plaintiff should have been required to prove the value of the fruit and ornamental trees which were alleged to have been destroyed by the poisonous gases. The decision in *Railway Co. v. Lycan*,

57 Kan. 635, 47 Pac. 526, and certain decisions by this court are cited as sustaining this contention. We do not so understand those decisions. In the Lycan case, it was held that damage to realty was properly shown by proof of the value of the trees destroyed by fire. In the syllabus the court said :

"It is only where the damages to one part of the land affect the other parts and are incapable of more definite and direct proof, that the evidence is necessarily confined to proof of the value of the whole tract before and after the injury, though the actual damages can never, in any case, exceed the difference between such values."

In the present case the only measure of a large part of the plaintiff's alleged damages was to be found in the diminished value of the real property as a whole. We think the court did not err in the admission of testimony showing the value of the property before and after the injury.

For the reasons just stated, we hold that the court did not err in instructing the jury that the measure of plaintiff's damage was the difference between the value of the real estate before and after the alleged injury thereto. The judgment of the district court is affirmed.