NORRIS v. BALTIMORE & O. S. W. R. CO.

(Circuit Court of Appeals, Seventh Circuit. June 7, 1901.)

No. 771.

RAILROADS—ACTION FOR INJURY BY FIRE—EVIDENCE OF NEGLIGENCE.

Where the evidence introduced by plaintiff in an action to recover damages occasioned by fire alleged to have been communicated by an engine on defendant's railroad is sufficient to establish such allegation, which, under the Illinois statute (Rev. St. c. 114, § 103), "shall be taken as full prima facie evidence to charge with negligence" the railroad company, the court is not justified in directing a verdict for defendant upon general testimony that the engine was equipped with a spark arrester which was in good condition, and that it was operated in a proper manner, where such testimony fails to show that the inspections relied upon to show the perfect condition of the spark arrester were carefully and thoroughly made, and there is evidence tending to show that the engine was at the time being crowded to make up lost time, and that other sparks in fact escaped from it. Under such a state of evidence the question of negligence is one for the jury.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

A. J. Hopkins, for plaintiff in error.
Edward C. Kramer, for defendant in error.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

WOODS, Circuit Judge. The court below directed a verdict for the defendant, and error is assigned upon that ruling by a separate

specification for each paragraph of the declaration. This is a note-worthy example of strict and technical compliance with the requirement of our rule 11 that the assignment of errors "shall specify separately and particularly each error asserted and intended to be urged." It is necessary, however, to refer only to those paragraphs of the declaration which are based upon the statute of the state (Rev. St. Ill. c. 114, § 103), whereby in 1869 it was enacted, and has since been the law of the state; "that in all actions against any person or incorporated company for the recovery of damages on account of any injury to any property, whether real or personal, occasioned by fire communicated by any locomotive engine while upon or passing along any railroad in this state, the fact that such fire was so communicated shall be taken as full prima facie evidence to charge with negligence the corporation, or person or persons who shall, at the time of such injury by fire, be in the use and occupation of such railroad." Issue was joined by the plea of not guilty, and in behalf of the plaintiff evidence was adduced which tended sufficiently to support the declaration; one witness, who was a passenger in the caboose of the freight train of the defendant drawn by the locomotive from which the fire causing the injury escaped, testifying that, his attention being aroused by another passenger crying out, "There goes a spark," he saw in the smoke from the locomotive a spark "about the size of a hulled walnut," not blazing, but looking like a chunk or coal of fire; that he saw it first about three feet above the ground, and that immediately upon its touching the grass, into which it fell a few feet beyond the right of way of the railroad, a flame sprung up. Other witnesses testified to seeing the flame start up and spread rapidly towards and into the fields and orchard of the plaintiff. There had been no rain for some weeks, and it was shown that this fire was the second caused by the same locomotive within the distance of half a mile or less. Witnesses, who were passengers upon the train at the time, and others, who were at work on the farm of the plaintiff, testified that the locomotive, as it passed the plaintiff's farm, was laboring hard, and making much noise. It is conceded that the fire on the land of the plaintiff was caused by a spark from the locomotive, but in defense proof was offered that the locomotive was equipped with the best-known means for preventing the escape of fire,—that is to say, a spark arrester, known as "the front-end extension"; that on the third day before and the second day after this fire occurred, no repairs having been made meanwhile, the arrester was duly inspected, and found to be in good order; and that the engineer and fireman in charge at the time were possessed of adequate skill and experience, and were operating the locomotive in a proper manner; and, there having been offered no direct evidence to the contrary, it is insisted that the peremptory direction of a verdict for the defendant was right. There are several reasons which forbid an affirmance of the ruling. The only evidence that the locomotive was being run in a proper and prudent manner is the testimony of the engineer and fireman, neither of whom pretended to have a definite recollection on the point. To the cross-question, "What were you

doing when you were passing plaintiff's farm? Were you working up steam?" the engineer answered, "Why, the engine was working, I guess;" and then, being asked why he smiled before answering, said, "I don't remember what I was doing." The testimony of witnesses, and some of the circumstances, such as that the train was behind time, and, after passing a rise, had just entered upon a slightly downward grade, which for several miles afforded an opportunity to make up time, a speed of as much as twenty miles an hour being attained before the train had passed the plaintiff's land, and the fact that the fire escaped, tend to show that the locomotive was pushed to an unusual, and perhaps sudden, effort, such as to account for a needless emission of sparks that were dangerous, even if not so large as the one which the witness said he saw. A spark one-half or even one-fourth that size, it is evident, would be more than enough to account for what happened; and perhaps enough, notwithstanding the other evidence offered, to convince the jury either that the spark arrester was out of order, or that the handling of the locomotive had been such as to force out sparks of unwonted size. Even if it be true, as contended, that a spark looking like a coal, and about as big as a hulled walnut, was an impossibility, it does not follow that the court should have withdrawn the testimony from the jury, though, of course, testimony may be so clearly incredible as to justify that course. The statement of the apparent size of the spark was presumably an expression of opinion, and, even if exaggerated,—as probably it was,—it was, nevertheless, competent to go to the jury as showing or tending to show a spark of unusual size; and for that purpose its force was not broken by the testimony of other witnesses that sparks as large as a hulled walnut could not have escaped. If as large as a hazelnut, it was enough to show an inadequate arrester, or an improper handling of the locomotive. But, besides all this, the evidence adduced does not show a proper inspection of the spark arrester. The company's master mechanic, in answer to the inquiry whether, if the netting should be loose around the fire box, or anywhere, the inspector could ascertain the fact by an examination with a torch through the handhole in the extension front, answered: "He could. He reaches in there, and looks, and also takes a bar to reach in there to find whether or not this netting has holes, or any part has dropped down." In respect to the inspections actually made, the inspector testified to the use of the torch only, and on cross-examination said that he did not take hold of the wire screen, or push anything against it, or pull it, in order to see whether it was loose or tight; but that he could see it, and it could not be loose and be in its place, since, if loose, it hangs down,—that is to say, he did not use a bar, as, according to the master mechanic, he ought to have done, in order "to find whether or not the netting had holes, or any part had dropped down." The judgment is reversed, with direction to grant a new trial.