Scott v. Thrall.

---

H. T. SCOTT v. F. G. THRALL et al.

No. 15,478. (95 Pac. 563.)

SYLLABUS BY THE COURT.

1. WILLS—Contest—Prima Facie Proof of Execution. In a suit to contest a will the probate thereof is prima facie evidence of the due attestation, execution and validity of the will.

2. ———— Explanation of Alteration—Burden of Proof. In such a suit the burden of proof to explain an erasure in a will is not upon the defendant in the first instance, but is upon the plaintiff to overcome the evidence afforded by such probate and to show the invalidity of the will by a preponderance of all the evidence.

3. ———— Time Alteration Was Made .a Question of Fact. Whether an erasure appearing upon a will duly admitted to probate was made before or after execution is a question of fact, to be determined by the court or jury trying the issue upon all the evidence, including the probate, aided by all reasonable presumptions and inferences.

4. ———— Opinion Testimony—Handwriting—Alteration. It is not error to refuse to permit an expert in handwriting to testify, from an examination of a will and an erasure therein, that a person who wrote with a nervous hand was unable to make such an erasure, although the witness might properly testify that the hand of the person who wrote the will was nervous and unsteady.

Error from Greenwood district court; GRANVILLE P. AIKMAN, judge. Opinion filed April 11, 1908. Affirmed.

*F. S. Jackson,* and *W. L. Huggins,* for plaintiff in error.

*R. P. Kelley,* and *W. S. Marlin,* for defendants in error.

The opinion of the court was delivered by

BENSON, J.: This was a suit by Harry T. Scott to contest a will upon the ground that the testator was not of sound mind, and because of alleged alterations therein after it was signed and attested. The trial court found against the plaintiff and sustained the probate of the will. The plaintiff does not rely upon the first ground, but urges that the evidence proved the alterations as alleged, and that the court erred in refusing to set aside the probate.

The will was drawn by the testator, who was advanced in years and infirm, but had been a man of large business experience. He left two sons and a grandson, the plaintiff, who was the only child of the testator's deceased daughter. The will indicates careful preparation, is good in form, apt in expression, and clear in terms. It gives to each of his other grandchildren— the children of his two sons—ten shares of bank stock, and to the plaintiff, Harry T. Scott, $5000. The seventh clause of his will, as probated, is as follows:

"I give and bequeath the remainder of my property and estate to my sons, E. W. Thrall and F. G. Thrall, in equal shares, and I desire said sons to be executors of my will, and they shall not be required to give bonds for the faithful performance of their duties."

The plaintiff's contention is that as originally written the words "and to my grandson H. T. Scott" were included in the above clause, between the words "Thrall" and "in," so that it read "to my sons E. W. Thrall and F. G. Thrall, and to my grandson H. T. Scott, in equal shares," etc., and that these words were erased after attestation. The original will shows an erasure, by scraping with a penknife or by the use of

· 44—77 KAN.

a rubber or otherwise, in the right-hand margin after the name "F. G. Thrall," and between that line and the next one below, at the left hand, indicating that whatever words were erased had been interlined. A photograph of the will plainly showing an erasure at this point was in evidence and is in the record. Another photograph, with the words which it is claimed were erased written in where the erasure had been made, discloses the fact that such words fit the place where the mutilation appears; the capital letters and the loops below the line appear to fit into the erasure, which was carefully made. There is no doubt but these words might have been written into the place where the erasure occurred, in the same handwriting. The will is dated December 11, 1900, and is duly attested. A letter was found in an envelope with the will, in the handwriting of the testator, as follows:

"EUREKA, June 1, 1903.
*"To whom it may concern:*
"I find in looking over my will to-day that through some oversight I failed to bequeath to my grandson, H. T. Scott, ten shares of First National Bank Stock, as I did to the rest of my grandchildren.
"It is my wish that he shall have the said ten shares of bank stock, which I omitted to bequeath to him in my will.          [Signed]          G. E. THRALL."

The contention of the plaintiff is that the words so claimed to have been interlined were written there before signing, that the erasure was made afterward, and that the will should be probated with that clause as originally written—which would give to the plaintiff one-third of the residuary estate—or that the whole will should be rejected because of such spoliation. The defendants insist that it was properly probated in the condition in which it appeared, with the erasure, when offered for probate.

Both parties rely upon presumptions — the plaintiff upon the presumption that the interlined words, being harmonious with the context and free from suspicious

Scott v. Thrall.

circumstances, were written in before the signing and attestation (*Neil, Adm'x, v. Case & Co.*, 25 Kan. 510, 37 Am. Rep. 259, 2 Cyc. 242; 1 Woerner, Law Admin., 2d ed., *98; 1 Jar. Wills, 6th ed., 152), and he claims it must be presumed that the erasure thereof was made after signing, because of the suspicious appearance of the instrument. (*Thrashing Machine Co. v. Peterson*, 51 Kan. 713, 33 Pac. 470; 2 Cyc. 234; *Crossman et al. v. Crossman et al.*, 95 N. Y. 145; *Matter of Barber*, 99 Supr. Ct. 489, 37 N. Y. Supp. 235; 1 Jar. Wills, 6th ed., 130.) The defendants rely upon the presumption afforded by the probate of the will. The statute of wills containing the provisions for contesting wills in the district court after probate includes the following: "The order of the probate court shall be *prima facie* evidence on the trial of such action of the due attestation, execution and validity of the will." (Gen. Stat. 1901, § 7958. See, also, *Rich v. Bowker*, 25 Kan. 7.) The defendants also claim that it must have been presumed in the district court that both the interlineation—whatever it was—and the erasure were made after the will was signed. In support of this latter presumption it is suggested that the above letter of June 1, 1903, shows that the testator had omitted something from the will that he desired to have in it, and that he may have written in the words so interlined, and, finding that he could not complete the intended bequest in orderly connection with the context, erased what he had so written.

Findings of fact were not requested, and none were made except the general finding for the defendants. The plaintiff contends, however, that the burden was upon the defendants to explain the erasure, and that without such explanatory evidence there was nothing to warrant the approval of clause 7 of the will as probated, and no evidence to support it, and that this court is not bound thereby, because it is not based on evidence. (*U. P. Rly. Co. v. Shannon*, 38 Kan. 476, 16 Pac. 836.)

In support of the presumptions claimed by the plaintiff testimony is referred to showing the friendly relations of the testator with this grandson, whom he appears to have held in high esteem, and his declarations that he had willed to each of his grandchildren ten shares of bank stock, and that he would have but three direct heirs, his two sons, F. G. Thrall and E. W. Thrall, and his grandson, Harry T. Scott. Reference is also made to the fact that for a short period before the death of the testator, when he was under the guardianship of his sons, they had the custody of the will, and produced it in the probate court in its present altered condition. Attention is also called to the age of the testator (seventy-nine years when the will was made), his weak physical condition afterward, and the improbability of his being able to make the erasure neatly, as it was done. On the other hand, it is shown that the deceased was a man of affairs, and other circumstances are referred to tending to show the necessary ability and skill.

Much has been written upon the subject of presumptions in case of altered instruments and the burden of proof in connection therewith. It is difficult to formulate general rules. We must be content to apply settled principles to the particular facts in solving the given case. In *Neil, Adm'x, v. Case & Co.*, 25 Kan. 510, 37 Am. Rep. 259, Mr. Chief Justice Horton said:

"It is impossible to fix a cast-iron rule to control in all cases; but certainly the second rule, and the one contended for by plaintiff in error, is not the true one. Clearly, in ordinary cases the alteration ought not to raise a presumption against the instrument, because the law never presumes wrong. The question as to the time of the alteration is, in the last instance, one for the jury. It is, like any other fact in the case, to be settled by the trier or triers of the facts. Generally, the instrument should be given in evidence, and in a jury case should go to the jury, upon ordinary proof of its execution, leaving the parties to such explanatory evidence of the alteration as they may choose to offer. If there is neither intrinsic nor extrinsic evidence as

to when the alteration was made, it is to be presumed, if any presumption is said to exist, that the alteration was made before or at the time of the execution of the instrument. Perhaps there might be cases when the alteration is attended with such manifest circumstances of suspicion that the court might refuse to allow the instrument to go before the jury until some explanation; but this case is not of that character." (Page 516.)

Later, Mr. Justice Johnston stated the principle thus:

"The indications of subsequent alterations may be so obvious and suspicious in some cases as to bring discredit upon the instrument, and require the party offering the same to account for the apparent changes. But in the absence of suspicious circumstances, no presumption can be indulged against the genuineness of the instrument." (*Thrashing Machine Co. v. Peterson,* 51 Kan. 713, 715, 33 Pac. 470.)

Other authorities on this subject are collated in a note appended to *State v. Scott,* 49 La. Ann. 253, in 36 L. R. A. 721, 739, and in volume 2 of the Cyclopedia of Law and Procedure, at page 233. In Wigmore on Evidence it is said:

"It used to be sometimes said that an alteration (*i. e.,* by erasure or interlineation), if apparent on the face of an instrument, placed on the offering party the burden of explanation by evidence. It was also (but inconsistently) said by some that the alteration was to be presumed innocent, *i. e.,* made before execution, unless particular circumstances of suspicion were apparent. For wills, again, it was sometimes maintained that, by exception, alterations should be presumed to have been made after execution. But the modern tendency is to avoid stating the problem in the form of such rules with exceptions, and, in particular, to abandon the so-called presumption against fraud and in favor of innocence, by which the alteration of a deed is presumed to have been made before execution; and to raise no genuine presumption in that regard. The first burden would thus be determined by the pleadings; and the question would usually go to the jury, upon all the evidence, whether the party claiming a

specific tenor for the document has proved his case; although the second burden, *i. e.*, of producing evidence, might be shifted by particular circumstances, under the ruling of the judge as to a sufficiency of evidence or a presumption." (4 Wig. Ev. § 2525.)

In this case the burden of proof was upon the plaintiff under the pleadings and by force of the statute. The will in the condition in which it was when probated was *prima facie* valid. This is not an appeal, but a suit to set aside the probate, and so there is no question here of the burden of proof such as may arise where an instrument bearing signs of an alteration is offered in evidence by the person claiming under it. The defendants did not offer the will to prove its existence and validity, and so the burden was not upon them, as plaintiff insists, to explain the erasure. The plaintiff offered it to show the alteration as tending to prove its invalidity, the burden being upon him to produce such proof.

The vital question in the district court was whether the evidence of the plaintiff in support of his claim that the alteration had been made after the execution of the will was sufficient to overcome the *prima facie* effect of the probate, considered in connection with all the testimony. This was a question of fact, upon all the evidence, including the will itself, the letter referred to, the photographs and testimony explanatory thereof, the physical and mental condition of the testator, the nature and situation of his property, the natural claims of the legatees upon his bounty, his relations with and feelings toward them, and all the circumstances appearing in the evidence, aided by all reasonable and proper presumptions. The conclusion of fact to be deduced from all this was for the court as the trier of the facts. (*Railway Co. v. Geiser,* 68 Kan. 281, 75 Pac. 68.) In this conflict of evidence the finding cannot be set aside by this court. (*Weil & Co. v. Eckard,* 37 Kan. 696, 15 Pac. 922; *Hill v. Ehrlich,* 66 Kan. 785, 71 Pac. 1127.)

Scott v. Thrall.

The plaintiff complains of the exclusion of evidence. A witness for the plaintiff, expert in handwriting, who made photographs of the disputed parts of the will and made tracings of the words claimed to have been interlined and erased, testified that these words so exactly fitted into the erasure that he believed they had been written there, and that the person who wrote the will wrote with a nervous, shaky hand. He was then asked this question: "Now, how could a person that had a nervous, shaky hand, in your opinion as an expert, have made that erasure?" An objection was sustained to this question. It will be observed that the witness was allowed to testify that the handwriting was nervous and unsteady, a matter about which his skill and experience in handwriting might have afforded special knowledge, but the question objected to related to the ability of the writer to control his hand in making the erasure, a matter about which one skilled in handwriting might have no special knowledge. The physical and mental condition of the testator was shown by the evidence, as well as his occupation, business experience, and habits, and from all this the court could determine as well as the witness whether the testator could make the erasure.

Another witness was asked if he could form an opinion whether the writing so erased was that of the testator. As the erasure only left a few mere dots of ink it seems unnecessary to comment on the ruling. Besides, the court appears to have been willing to hear a direct answer, but the witness insisted upon an explanation which the court would not hear, and so sustained the objection.

We find no error in the rulings complained of. The judgment is affirmed.