HANFORD W. KERR *et al.* v. CORYDON W. KERR *et al.*

No. 15,924.

1. EVIDENCE—*Demurrer—Trial to the Court.* It was said that in a trial to the court the rule relating to demurrers to the evidence is the same as in jury trials.
2. WILLS—*Undue Influence—Evidence.* In a suit to set aside a will on the ground that its execution had been procured by undue influence a demurrer to the plaintiffs' evidence was improperly sustained.

Error from Wyandotte court of common pleas; WILLIAM G. HOLT, judge. Opinion filed April 10, 1909. Reversed.

*C. H. Nearing, Amos Townsend,* and *S. H. Allen,* for the plaintiffs in error.

*H. L. Alden,* and *J. L. Smalley,* for the defendants in error.

*Per Curiam:* This action was commenced in the court of common pleas of Wyandotte county to set aside a will, on the ground that it had been procured by undue influence. At the close of the testimony on the part of the plaintiffs a demurrer to the evidence was

sustained and judgment entered for the defendants. The plaintiffs prosecute error. The action was brought under sections 7957 and 7958 of the General Statutes of 1901, which read:

"The mode of contesting a will shall be by civil action in the district court of the county in which the will was admitted to probate, which action may be brought at any time within two years after the probate of the will, and not afterward, by any person interested in the will or estate of the deceased.

"The order of the probate court shall be *prima facie* evidence on the trial of such action of the due attestation, execution and validity of the will."

This case was tried to the court without a jury, but the same rule relating to demurrers to the evidence obtains as is applicable in jury trials. This point was directly decided in the case of *Wehe v. Mood,* 68 Kan. 373, where it was said:

"In considering and deciding a demurrer to plaintiff's evidence in a case tried to the court, the same rule obtains as in cases tried to a jury. The court can not weigh conflicting evidence, nor regard the case as though submitted by the defendant upon plaintiff's showing, but must consider as true all portions of the evidence which tend to prove the allegations of the petition." (Syllabus.)

(See, also, *Farnsworth v. Clarke,* 62 Kan. 264; *Wolf v. Washer,* 32 Kan. 533.)

It follows that if there was any evidence tending to establish that the will was obtained by undue influence the demurrer should have been overruled.

The testatrix was about eighty-three years of age when the will in controversy purports to have been executed. She was ignorant and illiterate, being unable to write or read writing. The will is dated November 3, 1902. A codicil was added July 8, 1903. She died November 23, 1905. Her husband is still living. They lived together more than fifty years, and were the owners of much valuable property—largely real estate—

in and adjoining Kansas City, in Wyandotte county. They owned over 200 acres of land, a part of which is covered by such city. All the property owned by them was held in the name of the testatrix. The husband of the testatrix had for many years, by reason of mental infirmity, been unable to transact business, and their business interests were kept and managed in her name.

They had six children, three sons and three daughters. One daughter and two sons still survive. The deceased children left children surviving them. The living children and grandchildren are named as parties to this action.

The plaintiffs accuse the two sons, Corydon W. Kerr and Hanford L. Kerr, of having used the undue influence upon the testatrix which caused her to make the will in question. For more than twenty years prior to the execution of the will the testatrix and her husband made their home with their son Hanford L. Kerr, who, in conjunction with his brother, had the complete control and charge of the property and business of their parents. The inability of the parents to manage their own business affairs, on account of their age, want of education, and ignorance of the new business conditions which suddenly grew up around them, was so pronounced that they recognized it themselves, and turned everything over to their sons and relied entirely upon them for everything. The testatrix and her husband had been hard-working, ignorant people in their younger days, unaccustomed to anything but a farm life, and were wholly unfitted for the conditions which the expanding city thrust upon them. Naturally, the sons came to have complete control over the parents in all matters relating to business affairs. As the decrepitudes of age increased they became as children and deferred to the wishes of their sons, to whom they looked for maintenance and support as though penniless, instead of wealthy.

The son Corydon and his attorney had an office together, where all business was transacted. The will in question was prepared by the son and his attorney, and was executed at their office, no one else being present except the testatrix and witnesses who were selected by the son. The testatrix subscribed it by making her mark. She could not read it. It was not read to her at the time it was subscribed by the witnesses, and it is not shown that it was ever read to her or that she was even told of its contents.

About the time the testatrix and her husband went to live with their son they owned property worth over $160,000. More than $50,000 of this was subsequently conveyed to the sons without consideration. The will devises the remainder largely to the children of these sons. It bequeaths to the testatrix's husband the sum of one dollar, and he consented in writing to the will. His subsequent conduct indicates that he was ignorant of the contents of the will, as he attempted to have some of the property therein devised conveyed to some of his grandchildren, and was very much disappointed and grieved when informed that it was already disposed of by the will. After the death of the testatrix the attorney employed by the sons was appointed executor, in accordance with the direction of the testatrix in the will. These sons, according to the conveyances of real estate shown to have been made by them, received over $100,000 for the sale of real estate, no part of which appears now in the hands of the executor or to have been reinvested or in any way expended for the benefit of the estate of the testatrix. The executor received only $1,218.47 personal assets.

Considering the age of the testatrix, her want of business ability and experience, her confidence and trust in her sons as her business managers and advisers, the fact that a large part of the testatrix's property (far beyond their fair or legal proportions

as heirs of the estate) was received by them through conveyances made by her, that a large part of the remainder was devised to their children, that the will in question was drawn by the attorney of these sons in their office and executed there in the presence of the son with whom she resided, his attorney and the witnesses selected by him alone, that the written consent of the husband to the will was executed under the same or similar circumstances, and that apparently both the testatrix and the husband were ignorant of the contents of the will, there was some evidence tending to establish undue influence. We are not called upon to consider the weight or value of this evidence, and we only say that it tends to establish the cause of action alleged in the petition and it was error to sustain a demurrer thereto.

For a discussion of the burden of proof and the nature and quantity of testimony requisite in such cases, see *Scott v. Thrall,* 77 Kan. 688, and *Ginter v. Ginter,* 79 Kan. 721.

The judgment is reversed, with directions to proceed in accordance with the views herein expressed.