No. 27,132.

ANNA CARLISLE, MARTHA HUNSICKER, LUCY RANSON, and FAUSTA FAROL MILLER, by Her Guardian, ANNA CARLISLE, *Appellants*, v. LAURA BAKER and PERRY D. BAKER, *Appellees*.

### SYLLABUS BY THE COURT.

1. TRIAL—*To Court—Ruling on Demurrer to Evidence.* In a trial to the court the rule relating to a demurrer to the evidence is the same as it is in a jury trial.

2. WILLS—*Mental Incapacity and Undue Influence—Sufficiency of Evidence as Against Demurrer.* In a suit to set aside a will because of the alleged mental incapacity of the testator, and of the undue influence of the principal beneficiary, it is not error for the court to sustain a demurrer to plaintiffs' evidence when such evidence, and all reasonable inferences to be drawn therefrom, considered most favorably to plaintiffs, fail to show such mental incapacity and fail to show any undue influence relating to the execution of such will.

Appeal from Sedgwick district court, division No. 4; ISAAC N. WILLIAMS, judge. Opinion filed May 7, 1927. Affirmed.

*John W. Adams, George McGill, William J. Wertz, George Adams* and *Harvey C. Osborne,* all of Wichita, for the appellants.

*Thomas C. Wilson* and *Henry Lampl,* both of Wichita, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is a suit to set aside a will and certain deeds because of the unsoundness of mind of the testator and grantor and of the undue influence of the principal beneficiary under the will and grantee in the deeds, and for the partition of the real property. The trial court sustained a demurrer to plaintiffs' evidence, and they have appealed.

----

Trial, 38 Cyc. p. 1946 n. 45. Wills, 40 Cyc. pp. 1144 n. 53, 1145 n. 54, 1333 n. 60.

R. B. Ranson and his wife, Mary J. Ranson, lived at Wichita for many years. They had five children, daughters, Anna Carlisle, Lucy E. Ranson and Martha Hunsicker, plaintiffs, and a daughter, Mrs. Miller, who died in 1919, leaving one child, Fausta Farol Miller, plaintiff, and the defendant Laura R. Baker. The daughter Lucy E. Ranson was mentally deficient, had never married, and made her home with her parents. They owned and operated a rooming house and owned other real property in Wichita. Mary J. Ranson died intestate in January, 1922. Fausta Farol Miller, after the death of her mother, made her home with her grandparents, R. B. and Mary J. Ranson, until the death of Mary J. Ranson, when she went to live with Anna Carlisle, who was, or then became, her guardian. Soon after the death of Mary J. Ranson, Laura R. Baker and husband moved into the home of her father, R. B. Ranson, and Lucy E. Ranson continued to live with them. There was litigation over the estate of Mary J. Ranson both in the probate court and in the district court, in which litigation Anna Carlisle was contending against her sister, Laura R. Baker, and her father, R. B. Ranson. Generally speaking, there seems to have been much ill feeling among the various members of the family. It is not necessary to detail this except to say there was an intensely bitter feeling between the plaintiff Anna Carlisle and the defendant Laura R. Baker, so much so that Mrs. Baker did not want Mrs. Carlisle to come to her home nor to see or communicate with her father, and on at least one occasion Mrs. Baker ordered Mrs. Carlisle and Mrs. Hunsicker away when they called. There is evidence that after the death of Mary J. Ranson, R. B. Ranson conferred with his daughter Laura R. Baker concerning his important business affairs. The evidence disclosed that Laura R. Baker rather dominated her father as to whether he should sell certain property, or whether he should build upon vacant lots he owned, and perhaps in other business matters.

On July 1, 1924, R. B. Ranson, then the owner of an undivided four-fifths of certain real property in Wichita, subject to a life estate of Lucy E. Ranson, for a purported consideration of one dollar and love and affection, conveyed the same to Laura R. Baker and husband. On January 3, 1925, R. B. Ranson purchased from one Sarah E. Thomas certain real property in Wichita for $3,000, the deed being taken to the defendant, Laura R. Baker, and husband. This conveyance was subject to an $800 mortgage on the property, and to pay the balance of the purchase price R. B. Ranson mort-

gaged other property he owned for $2,000. On the same date R. B. Ranson also executed a deed to Laura R. Baker for the property purchased from Mrs. Thomas, the consideration being one dollar and love and affection, in which deed he reserved to himself the use, occupancy and enjoyment of the real estate during his natural life.

On January 2, 1925, R. B. Ranson executed his will, in which he gave Anna Carlisle and Martha Hunsicker $5 each, gave Fausta Farol Miller $500, to be paid to her when she arrived at the age of twenty-one years, and gave all the remainder of his property to the defendant Laura R. Baker, provided that should the circumstances of Lucy E. Ranson become such that she should need financial assistance to provide for her reasonable comfort and support, then the executrix was directed to pay to or for Lucy E. Ranson a sum not to exceed $1 per day, so long as in the judgment of said Laura R. Baker it was necessary for her reasonable comfort and support. The will nominated Laura R. Baker as executrix, and directed that she be permitted to execute the trust without giving bond. Perhaps a month after executing the will R. B. Ranson became seriously ill, was taken to the hospital and operated upon, and died there five days after the operation, on February 13, 1925.

This action is to set aside the two deeds and will above mentioned. It is stipulated that the value of the property which passed to Laura R. Baker by the deeds and the will in question (subject to the payment of $500 to Fausta Farol Miller when she reached the age of twenty-one and to the possible payments necessary for the care of Lucy E. Ranson), and subject to the mortgages on the property, was $5,650.

There is a total lack of any evidence as to who drew the will or deeds in question, or the circumstances under which they were drawn, or that the defendant Laura R. Baker, or her husband, ever discussed with her father the matter of the preparation of the will and deeds.

The question before us is whether the court erred in sustaining the demurrer to the evidence of plaintiffs. In support of the ruling of the trial court it is argued by the appellees that on a demurrer to the evidence in a case triable to the court—that is, one in which the parties are not entitled to a jury as a matter of right—the court should weigh the evidence. This contention is erroneous. In *Farnsworth v. Clarke,* 62 Kan. 264, 62 Pac. 655, it was held:

27—123 KAN.

"In considering and deciding a demurrer to plaintiff's evidence in a case tried to the court the same rule obtains as in cases tried to a jury. The court cannot weigh conflicting evidence nor regard the case as though submitted by the defendant upon the plaintiff's showing, but must consider as true all portions of the evidence which tend to prove the allegations of the petition. (*Wolf v. Washer,* 32 Kan. 533, 4 Pac. 1036.)" (Syl.)

See, also, *Kerr v. Kerr,* 80 Kan. 83, 101 Pac. 647; *Rowan v. Rosenthal,* 113 Kan. 604, 215 Pac. 1008; and *First Nat'l Bank v. Lovett,* this day decided.

Considering the evidence, then, and all reasonable inferences that may be drawn from it most favorable to plaintiffs, is there competent, substantial evidence to support the contention of plaintiffs that R. B. Ranson lacked mental capacity to execute the instruments in question, or that defendants unduly influenced him in their execution?

As to the mental capacity of R. B. Ranson, it really is not seriously contended by appellants that the evidence showed that he lacked mental capacity to execute the instruments in question. He was seventy-eight years of age at the time of his death, his physical strength had diminished with advancing years, but he attended to such labors as he had, was called and served as a regular juror in the district court through one term in 1924, and until his last sickness, which caused him to go to the hospital, was in fair physical condition for a man of his age. There was really no evidence of consequence tending to show impairment of mental faculties. On that point the court did not err in sustaining the demurrer.

As to the question of undue influence, the evidence discloses that during the about three years which defendant and her husband lived with R. B. Ranson after the death of his wife he conferred with his daughter, Mrs. Baker, on important business matters. The evidence even tends to show that he did what Mrs. Baker wanted him to do with reference to whether he should sell certain property, or improve other property, and in perhaps other business matters. Viewed most favorably for plaintiffs, the evidence tends to show that Mrs. Baker dominated her father with respect to important business matters. The difficulty with this evidence, so far as this case is concerned, is that there is an utter lack of any showing that it had anything to do with the will and deeds in question. The circumstances of their execution were not shown by the evidence. It would not have been improper for Mrs. Baker to have discussed

Carlisle v. Baker.

with her father the matter of his will or the deeds which he executed, even to the extent of presenting reasons why they should be executed as they were. But there is no evidence that she did so, that she knew he was going to make a will, or ever discussed the matter with him in the slightest degree. So far as this evidence discloses, without prompting from any source, and without consultation or advice from any person, he voluntarily caused to be prepared and executed the will and the deeds in question. In Ginter v. Ginter, 79 Kan. 721, 101 Pac. 634, it was held:

"To destroy the validity of a will undue influence must amount to coercion, compulsion or constraint which destroys the testator's free agency and by overcoming his power of resistance obliges him to adopt the will of another instead of exercising his own. It must be brought to bear directly upon the testamentary act, and particular parties must be benefited or disfavored as the result of the purpose and pressure of the dominating mind." (Syl. ¶ 1.)

Other rules respecting the question of undue influence are there stated and fortified with authorities. The case itself has been frequently cited, not only by this, but by other courts, and by writers on the subject of wills. It is not necessary here to write extensively on the question. Since there is no evidence of any influence whatever by defendant to cause the deeds or will to be executed, there can of course, be no undue influence shown. It was not error for the court to sustain the demurrer on this point.

The judgment of the court below is affirmed.