No. 36,462

J. A. HENLEY, *Appellant,* v. ELSTON J. CARRINGTON, Administrator of the Estate of E. J. Carrington, Deceased, *Appellee.*

(164 P. 2d 139)

Opinion filed December 8, 1945.

*O. C. Zwicker,* of Eureka, argued the cause for the appellant.

*Edward E. Pedroja,* of Eureka, argued the cause for the appellee.

The opinion of the court was delivered by

HOCH, J.: This was an action to recover on a promissory note. The trial court sustained defendant's demurrer to the plaintiff's evidence, and the plaintiff appeals. The principal question here is whether the burden was upon the plaintiff to show that material

alterations appearing upon the face of the note were made before delivery or was upon the defendant to show that they were made after delivery and without the consent of the maker.

J. A. Henley, as payee named in the note, filed his claim on the note in the probate court of Greenwood county on November 7, 1944, in the estate of E. J. Carrington, deceased, maker of the note. The note, which was for $836 with interest at eight percent was written with a lead pencil and bore date of May 11, 1941, with a due date of six months thereafter. The administrator, Elston J. Carrington, pleaded that the note had been materially altered by the payee by changing the date of maturity and that if the date had not been so changed the recovery would have been barred under the statute of limitations. The probate court allowed the claim on the note in the sum of $1,070.08, and the administrator took an appeal to the district court.

In the district court the payee, Henley, replied to the administrator's answer as to the alterations, alleging:

"That the above note referred to and all writing thereon is in the hand writing of the said maker and signor of said note, and all alterations were made by the said maker thereof in the presence of the said claimant with his consent and approval, as it was renewed from time to time the said maker thereof erased the lead pencil dates and in that manner in the presence of this claimant to extend the time of payment, to which the said claimant made no objections, and was returned to him as a renewed note."

In the reply, Henley further alleged that the note was given for "grain, rent of farm land furnished by said claimant," and recovery was asked in the amount of $1,070.08 with interest at the rate of eight percent from March 3, 1945.

Appellee states that the note was marked by the reporter, but that it was not offered in evidence. The record does not disclose that any point was made as to this in the trial court. Apparently the case was tried on the theory that the note was in evidence and we shall so treat it here.

Invoking the provisions of G. S. 1935, 60-2804, the defendant objected to any testimony on the part of the plaintiff as to transactions had with the maker of the note, since deceased, with reference to the execution, delivery or alterations made in the note. The court took the objection under advisement and examination and cross-examination of the plaintiff proceeded. Later the court ruled out as inadmissible under the statute all evidence as to transactions in the matter had by the plaintiff with the maker of the

note, since deceased, and sustained the defendant's demurrer. This appeal followed.

While we have not been furnished with the note or a photostatic copy, it is agreed that alterations were apparent on the note itself. It is also agreed that if any endorsement of payments of interest or principal were made on the note they have become obliterated. Appellant admits that the dates on the note were changed several times, and no contention is made that if the present maturity date shown on the note was not made prior to delivery, or to redelivery, that recovery is not barred by the statute of limitations.

It is elementary that any material changes made in a negotiable instrument without the assent of all parties voids the instrument, except in the hands of a holder in due course not a party to such alteration. (G. S. 1935, 52-906.) Likewise, it is clear that the change in the maturity date constituted material alteration (G. S. 1935, 52-907). Such parts of appellant's proffered testimony as related to transactions with the maker of the note were clearly inadmissible under the statute. Appellant contends that by cross-examining the plaintiff concerning the circumstances connected with the various changes made between 1931 and 1941 in the maturity date of the note as to which he had testified upon direct examination the defendant opened the door to all testimony concerning the alleged transactions with the deceased. The contention is not good. The record discloses that the defendant objected from the start to testimony by the plaintiff as to such transactions and that the trial court reserved its ruling on the objection, and subsequently ruled out all such testimony adduced both upon direct and cross-examination. Under such a situation the defendant did not waive his objection by cross-examining the plaintiff.

Appellant testified that he had carried the note with him in his billfold; that he did not make the changes which appeared on the note; that the date had been changed several times; that endorsements on the back of the note had been rubbed off from carrying the note in his billfold; that he didn't know why "it wasn't rubbed off the front"; that it was all "made in lead pencil.". Appellee did not contend that the signature on the note is not the signature of the purported maker, E. J. Carrington. Averments as to some other testimony are made in the briefs but evidence not shown in the abstract or counter abstract or which opposing counsel do not admit was received cannot be considered.

This action being by the original payee against the estate of the maker we need give no consideration to questions relating to rights of holders in due course. (G. S. 1935, 52-502.) Material alterations being apparent—and being admitted—upon the face of the note the question is whether the burden of proof as to when and under what circumstances they were made was upon the plaintiff, as held, in effect, by the trial court.

On the question of where the burden of proof lies when material alteration appears on the instrument itself the authorities are in great conflict, lack of harmony existing even in cases from the same jurisdiction. (3 C. J. S. 991 *et seq.*, and particularly pp. 995-999; 2 Am. Jur. ¶ 106-109, pp. 668-671; 44 A. L. R. pp. 1253-1255.) One line of decisions holds that an alteration will be presumed to have been made before or at the time the instrument was executed, especially in the absence of "suspicious appearance" or of "suspicious circumstances" developed by extrinsic evidence. This view is based, primarily, upon the general doctrine that the law does not presume fraud, but, on the contrary, presumes innocence. It is said in 3 C. J. S., footnote, page 997, that the federal courts generally follow this rule. What constitutes, under this line of decisions a "suspicious appearance" or "suspicious circumstances" is not made clear and no definite rule can be deduced (3 C. J. S. [b] p. 999 and cases cited). A second line of cases holds that the presumption is that the alteration was made after the instrument was executed and delivered. The text writer on alteration of instruments in American Jurisprudence condemns such a general rule as "harsh" and "unsound on principle" and asserts that it "is but little followed." (2 Am. Jur., p. 670.) However, the cases there cited in support of the rule as well as many others hardly justify the broad statement that the rule "is but little followed." Many courts refuse to follow either rule heretofore stated and hold that no presumption arises in favor of either party, leaving the jury to determine in the light of all the evidence, intrinsic and extrinsic, when the alteration was made (see numerous cases cited in 2 Am. Jur., p. 671, footnote 16).

In a statement of a general rule to be followed our own cases are inconclusive—at least insofar as those which our research has developed are concerned. The early case of *Neil Adm'x, Case & Co.* 25 Kan. 510 tends to support the proposition that in the absence of either intrinsic or extrinsic evidence to the contrary, the presumption, if any, is that the alteration was made before or at the time the in-

strument was executed. In that case, as in the instant one, the payee sought to recover from the estate of the alleged maker, later deceased, and it appeared when the instrument was presented in evidence that the rate of interest had been changed from seven to ten or from ten to seven percent. Upon objection by the administratrix to receiving the note in evidence the trial court overruled the objection on the ground that the burden was upon the defendant to show that the alteration was made after the execution of the instrument. Although the case was decided upon another point—that the note was admitted without sufficient proof of its execution—the court did discuss the question of burden of proof relating to alterations and expressed the view as above indicated. However, the court did say: "Perhaps there might be cases when the alteration is attended with such manifest circumstances of suspicion that the court might refuse to allow the instrument to go before the jury until some explanation; but this case is not of that character." (p. 516.) It is true that the Neil case was decided (1881) long before the enactment of our negotiable instruments law (1905), but what is there said is nonetheless pertinent at least to the present issue.

In *Threshing Machine Co. v. Peterson*, 51 Kan. 713, 33 Pac. 470, the court permitted the defendant under a verified general denial, to introduce evidence that the note upon which recovery was sought had been altered after its execution. Apparently the note bore no evidence of alterations "nor anything that would raise a suspicion that it had been changed since its execution." Under such circumstances the court said that the production of the note with the defendants' signatures would be prima facie evidence of its genuineness. But the court added that "alterations may be so obvious and suspicious in some cases as to bring discredit upon the instrument and require the party offering the same to account for the apparent changes."

*Scott v. Thrall*, 77 Kan. 688, 95 Pac. 563 involved an alleged alteration in a will and is perhaps therefore not very helpful here. However, the general subject of burden of proof with reference to alterations of instruments was discussed somewhat, the Neil and Threshing Machine cases, *supra*, being cited. The case apparently leans toward the doctrine that no general rule as to presumption can be laid down, but that the indications of subsequent alterations or the circumstances may be such in a particular case as to require proof of genuineness.

In *Wagler v. Tobin,* 104 Kan. 211, 178 Pac. 751, the defendants alleged fraudulent alteration in the note subsequent to delivery, and complained of the court's instruction that the burden was upon them to establish that fact. They based their contentions largely upon the fact that in his petition the plaintiff had set out some of the preliminary negotiations and that one set of notes prepared for signature had been substituted for another and that certain changes were made in the notes before delivery to make them conform to the final agreement. However, the notes were fair on their faces and it was held that in the absence of evidence to prove alteration the court and jury were bound to accept them as they were produced. The burden in such a case was upon those alleging fraudulent alteration.

*Wallace. v. Wallace,* 101 Kan. 32, 165 Pac. 838, dealt with an allegedly fraudulent endorsement of payment on the back of a note. The action was by the administratrix of the estate of the payee and was against the payee's son, maker of the note. The issue, as far as at all pertinent here, related to the correctness of the instructions, and did not arise upon demurrer to evidence. There had been conflicting testimony as to whether an endorsement of payment had been changed from $200 to $2,000. This court upheld an instruction that the burden was upon the plaintiff, suing upon the note to prove by a preponderance of the evidence that the defendant had erased the smaller amount and substituted the larger amount in the endorsement of payment, but that if the jury believed from preponderance of the evidence that such substitution had been made by the defendant, maker of the note, the burden would then be upon him to show by a preponderance of the evidence that the substituted figure was the true amount for which he was entitled to credit.

No purpose would be served by reference to many other Kansas cases examined which deal with the general subject of alterations of written instruments. We find none which deals directly with a situation like the one before us. There is no necessity of attempting upon this record to lay down a general rule as to the burden of proof for application to all cases where material alteration appears on the face of an instrument. That may well await a more complete record and a more thorough briefing of the question than here presented. However, on the facts here admitted, we find no difficulty in affirming the order sustaining the demurrer. Appellant admits

that the note, written in pencil, was first executed in 1931; that the dates—including the maturity dates—have been changed several times. He says that all endorsement of payments written on the back had been worn off by being carried in his billfold, but no explanation was offered as to why the pertinent dates, appearing on the face of the note, had not likewise been worn off. The note, as alleged by appellant, bore a maturity date of November 11, 1941. Appellant seeks recovery of the full amount of the principal together with interest from the date of the note, and it is not contended that any action was brought to recover either principal or interest until three years after the maturity date, when claim was filed a few days before the nine months' period expired within which claims could be filed against the estate of the deceased maker. In addition to these facts and circumstances we cannot disregard the fact that no action was brought until after the death of the maker. We are not here saying that in no such case would the holder of a note showing alteration upon its face be relieved of the burden of showing that the alteration was made before delivery, but certainly such a presumption in the holder's favor, where the maker is dead, should be indulged with the greatest of caution. Otherwise the door would be opened wide to nullification of the statute relating to testimony as to transactions had with persons since deceased. The trial court did not err when it held, in effect, by sustaining defendant's demurrer to the evidence, that appellant had not met a burden which rested upon him under the circumstances shown.

The judgment is affirmed.