The Missouri, Kansas & Texas Railway Company
v. Belle Lycan.

No. 9253.

1. Freehold —*petition averring destruction of trees, shrubs and vines growing on owner's land, alleges injury to.* A petition which alleges that the plaintiff was the owner of certain lands particularly described, upon which there were standing and growing certain fruit, shade, and ornamental trees, shrubs and vines, also particularly described, and that the defendant negligently permitted fire to escape from its locomotive, which spread, burned and destroyed such trees, shrubs and vines, alleges an injury to the freehold.   Trees growing on the land of the owner for fruit, shade or ornament, are part of the realty, and no other facts than these need be stated in the petition to show that they are such.

2. SPECIAL FINDINGS — *of particular actionable negligence will support verdict, though other findings negative other acts of negligence alleged.* In an action against a railway company to recover damages for negligently permitting fire to escape from one of its locomotives, where it is alleged that the defendant was negligent in failing to provide such locomotive with a sufficient spark-arrester, and in the manner of operating its engine, and, also, in that it negligently permitted tall grass, weeds, and other combustible material to remain on its right of way, *held*, that a finding of negligence in not burning off the right of way, based on sufficient evidence showing that the fire started in and spread from such grass and weeds, will support a general verdict for the plaintiff, notwithstanding findings in favor of the company on the other charges of negligence.

3. INJURY TO FREEHOLD — *if thing destroyed has independent value that value may be proved instead of value of land before and after.* In such an action, evidence as to the value of the trees while growing on the land and as a part of it, is competent for the purpose of showing the amount of the plaintiff's damages. Where a particular thing attached to the soil, and, therefore, a part of the realty, but which has a distinct value as such, susceptible of definite measurement, is injured or destroyed, the evidence in an action to recover damages therefor may properly be directed to the value of such specific thing as a part of the land, and, in actions of this kind, is ordinarily the best and most satisfactory evidence. It is only where the damages to one part of the land affect other parts, and are incapable of more definite and direct proof, that the evidence is necessarily confined to proof of the value of the whole tract before and after the injury, though the actual damages can never, in any case, exceed the difference between such values.

4. ADMISSION OF TESTIMONY — *certain rulings on, examined.* Certain errors in the admission of testimony considered, but *held* not to have substantially affected the rights of the plaintiff in error.

*Error from Crawford District Court.*
*Hon. J. S. West, Judge.*

AFFIRMED.                    OPINION FILED JANUARY 8, 1897.

THE petition in this case, filed in the Court below by Belle Lycan, as plaintiff, alleged that the defendant was a corporation operating a line of railroad in Crawford County, and, second :

"That this plaintiff, on the 18th day of October,

1891, and for a long time prior thereto, was the owner of, and possessed of the following described lands, to wit : The southeast quarter and the east half of the southwest quarter of section four, township twenty-eight, of range twenty-two in Crawford county, Kansas, upon which said lands there were growing and standing large and valuable trees, shrubs, vines, apples, rick of straw, as follows, to wit : [here follows a particular description of the number and kind, and value of each], and all of the foregoing items, consisting of trees, vines, bushes, apples and straw, were the property of this plaintiff, and were of the aggregate value of $7,383.  .  .  . ''

'' Fourth.  Plaintiff says that on or about the 18th day of October, 1891, the said defendant was operating its said railroad hereinbefore mentioned, and did run a large passenger train, No. 4, drawn by locomotive engine, numbered —, along and over said railroad in Crawford county, Kansas, and when said passenger train, and locomotive, or engine, was passing through and over said section 4, township 28, range 22, in Crawford county, Kansas, at about 12 : 30 o'clock P. M. of that day near to this plaintiff's land, said defendant carelessly, negligently, and unlawfully permitted large flames and sparks of fire and live cinders to escape from its said locomotive or engine, by carelessly, negligently and unlawfully failing to provide, and have sufficient safety screens or spark arresters attached to its said engine to prevent fire and sparks from escaping from its said locomotive or engine, and, by reason of the said defendant's negligent, unlawful and careless manner, in which it was operating said railroad, the grass beside said line of railroad, and on said defendant's right of way became, and was, ignited by and from sparks and coals of fire emitted and thrown from its said locomotive or engine.

'' Fifth.  Plaintiff says that the said defendant carelessly, negligently, and unlawfully permitted tall grass and weeds, and a large amount of combustible material to grow, be, and remain on the right of way of the said railroad company, and by reason of said defendant's said careless, negligent, and unlawful manner

of operating said railroad by failing to provide sufficient safety screens and spark arresters for its said engine or locomotive, and permitting said grass, weeds and combustible material to grow, be, and remain on its said right of way, it permitted fire and sparks to escape from its said locomotive or engine, and which said fire and sparks, so escaping or thrown, or permitted to escape, or be thrown from its said locomotive or engine, the grass, weeds, rubbish and combustible material so carelessly, negligently and unlawfully permitted to be and remain along by, and adjacent to, said line of railroad, became and was ignited ; and the said defendant carelessly, negligently and unlawfully permitted said fire to spread and communicate to the premises of this plaintiff, and which said fire burned and destroyed the apple trees, budded peach trees, seedling peach trees, walnut trees, cherry and plum trees, hedge fences, gooseberry bushes, grape vines, blackberry vines or bushes, apples and straw hereinbefore set forth, and the property of this plaintiff to her damage in the sum of $7,383.''

To this petition the defendant demurred, and the demurrer was overruled. Thereafter an answer containing a general denial and other matters of defense was filed. The jury returned a general verdict in favor of the plaintiff for $2,140 damages, and $175 attorney's fees, and also made answers to special questions, among which are the following :

''9. What property belonging to the plaintiff was burned and destroyed by this fire, if any, stating fully all items?

| | |
|---|---|
| *Ans.* 287 apple trees of various kinds killed | $1,435 |
| 516 forest trees of various kinds killed | 129 |
| 41 budded peach trees various kinds killed | 41 |
| 160 seedling peach trees various kinds killed | 40 |
| 10 grape vines various kinds killed | 5 |
| One-half acre blackberries killed | 25 |
| 30 bunches gooseberries killed | 6 |
| 120 rods hedge fence killed | 60 |
| 164 apple trees, body and limbs damaged | 320 |
| Plums and cherries | 28 |
| 87 walnut trees | 43 |
| | $2,140 |

"34. Is it not a fact that all of the apple trees, peach trees, walnut trees, plum and cherry trees, gooseberries, grape vines and blackberry vines and bushes were planted and growing upon said land for the fruit they would produce and for no other purpose whatever? A. Yes, except peach and walnut, which were for shade and wind break also."

"43. Is it not a fact that said engine and the safety screen and spark arrester were examined by Engineer S. J. Thurber, on arrival of said engine at Sedalia, Missouri, on the evening of October 18, 1891, and on the morning of October 19, 1891, the safety screen and spark arrester were then in good condition and properly adjusted? A. Yes.

"44. Is it not a fact that said engine was carefully and prudently handled and managed by said Engineer S. J. Thurber and his fireman, S. Bowser? A. Yes.

"45. You may state what, if anything, the defendant, its employes, agents or servants, could have done that they did not do to prevent a communication of said fire to the plaintiff's land. A. Burned off right of way.

"46. If defendant had cleaned off and burned its right of way would fire have been communicated to the land claimed by the plaintiff? A. No.

"47. Is it not a fact that a 4 x 4 mesh netting is the closest that can be used in coal-burning engines? A. Yes."

"66. If you find said fire of October 18, 1891, which destroyed the property described by plaintiff in her petition was caused by the negligence of defendant, you may then state fully all the negligence of the defendant which caused said fire. A. By not burning off right of way."

"74. State whether the fire of October 18, 1891, which destroyed the property described by plaintiff in her petition was accidental. A. No."

The defendant moved for judgment on the special findings, and, also, for a new trial. Both motions were overruled, and judgment was entered for the

amount of the verdict and attorney's fees. The defendant now seeks a reversal of this judgment.

*T. N. Sedgwick*, for plaintiff in error.

*Wells & Woolley*, and *J. D. McCleverty*, for defendant in error.

ALLEN, J. There are 17 specifications of error in the brief. Most of them, however, merely present in different forms the same proposition, the substance of which is, that the defendant failed to allege and show that the property destroyed was a part of the freehold and added to the value of the farm, and that the destruction thereof diminished its value. It is urged that the petition is insufficient for the purpose of a recovery as for an injury to the land, and that the case was erroneously tried on that theory. The petition alleges that the plaintiff was the owner of the land, and that the trees, etc., were growing and standing upon it; that the defendant

1. Petition averring destruction of growing trees alleges injury to freehold.

negligently permitted fire to escape from its engine, and that such fire spread and burned them. We fail to perceive any essential fact omitted from the petition. A fruit tree, bush, or vine kept standing or growing for its fruit, or a shade or ornamental tree or bush, is a part of the realty, and presumably adds to the value of it. There is nothing whatever in the petition or evidence indicating that the orchard that was destroyed bore any different relation to that realty than orchards usually do to the land on which they stand ; and it hardly seems a question open to discussion whether orchards and ornamental trees and shrubs are to be treated as a part of the realty. There is no question here concerning nursery stock or severed timber. The ques-

tion as presented by objections to the testimony offered, varies but little, in substance, from that raised on the demurrer to the petition. It is that proof was made of the amount of damages to the farm without any corresponding averment in the petition, which stated the value of the different trees and shrubs destroyed and injured. The facts stated in the petition showed an injury to the freehold, and it concluded with the statement that that injury was to plaintiff's damage in the sum for which she asked judgment. It is never necessary, nor even proper, to plead conclusions of law, nor deductions from the facts on which a cause of action arises. It is always desirable that the pleader state concisely the facts constituting his cause of action, and thereupon demand the relief he is entitled to. The trial court rightly held that testimony concerning the value of the trees should be confined to their value to the farm and as a part of it.

The defendant also objected to witnesses being allowed to state the value of the trees and other things destroyed as a part of the freehold, on the ground that this was allowing them to assume the province of the jury and fix the plaintiff's damages. It is 3. Independent value of trees, etc., may be proved. ˙contended that the question should have been confined to the value of the farm as a whole before and after the injury, leaving the jury to compute the damages by deducting one from the other. While this is undoubtedly the regular and proper method of arriving at such damages as cannot be itemized and definitely measured in detail, it does not preclude the use of the best evidence which the nature of the case affords. Where a thing, whether it be a building, a tree or shrub, is destroyed by a wrong-doer, the most natural

41—57 KAN.

and best measure of the damage is the value of the thing destroyed as an appurtenant to, or part of, the realty; and ordinarily the value of the thing destroyed would be the measure of the injury to the freehold. If for any reason the injury to the realty should be in fact less than the value of the thing destroyed, the plaintiff's recovery would be limited to the actual diminution in value of the realty. While this might be shown, either on cross-examination of the plaintiff's witnesses. or as a matter of defense, it does not prevent proof by the plaintiff of the value of the thing destroyed as a part of the realty, as was done in this case.

There are a number of other assignments of error on the admission of testimony. One is that the Court erred in admitting the records, from the office of the Register of Deeds, of various deeds in the chain of the plaintiff's title to her farm. She produced three original deeds, one of which was from her mother to her, and the record was the only proof of the other conveyances in her chain of title. The objection is, that it was not shown that the originals were not in her possession. Though the evidence adduced was not very satisfactory, the testimony of her brother tended to show that he had charge of all her papers relating to the land, and that the deeds produced were all she had. In some cases, a trial court might with propriety have insisted on more strict preliminary proof, but in this case it appeared, without contradiction, that the plaintiff was in possession of the land, claiming to hold it under the deed from her mother. This was clearly sufficient as a *prima facie* showing of title, and there being no evidence against it, an error in admitting the records, if error there was, would be immaterial. Complaint is also made of the admission

of the testimony of the section-foreman, Jury, that two fires were reported as set out by that train, and also of the admission of the testimony of Henry Gintzell to statements made to him by the claim adjuster of the Company with reference to the fires that were started, and especially the one that burned the plaintiff's property. If, as claimed by the defendant in error, the witness, Jury, meant merely to state what fires he reported to the Company as having occurred on his section, perhaps the evidence was admissible; but the testimony of Gintzell as to what the adjuster told him appears objectionable. The error in its admission is unimportant, however, for the testimony of the witnesses for the defendant, as well as of those for the plaintiff, all tended to show that this particular fire was started by the engine of the defendant, and that at least one other fire was also started by it near by on the same trip. The fire that burned the plaintiff's property is not accounted for in any other manner than by having escaped from the defendant's engine; and there really was no conflict in the evidence on that point. No witness on either side attempted to account for it in any other manner; while the witnesses for the plaintiff testified that they saw the fire start on the right of way just after the train passed, and the plaintiff testified that she saw a fire start down the road, south and west from the one that passed over her place, and that she watched and saw this fire start just as the train passed. The defendant had the engine examined after it arrived at Sedalia, because it was reported that fires had been started. Although no witness testified to having seen a spark pass from the engine to the dry grass and start a flame, the connection of the fire that burned the plaintiff's property

with that of the defendant's engine is traced by the proof in the case about as well as a prairie fire can often be traced to a locomotive engine, and by evidence which is quite harmonious so far as it goes.

G. S. Mosteller testified at length concerning the number and kinds of trees and shrubs killed and injured, and their value ; he was examined and cross-examined minutely with reference to all the particulars.   Thereafter, A. J. Baker was called, and testified to having been through the orchard in June, before the fire, trimming the trees ; that he was in it a few days after the fire ; that he appraised the damages to the orchard with Mosteller and Linton.   He was then asked :

"I wish you would go on and state to the jury to what extent,— state the number of trees.

"Court: Did you hear Mr. Mosteller's list given here?   A.  Yes, sir.

"Court: Is that correct?   A.  Yes, sir.   His expression is mine exactly.

"Did you three appraisers agree upon the number of trees, and value of each tree?   Yes, sir."

This question was objected to by the defendant as incompetent and irrelevant, and the objection was overruled by the Court, for the purpose of saving time.   Similar questions were asked the witness Linton, and a similar ruling was made.   This is certainly a very objectionable method of examining witnesses. One witness ought not to be called on to either indorse or criticise the statements of another with reference to the assessment of damages in such a case as this. His statements of fact, should be only of what he himself knows, and the estimates of value should be his individual judgment, unbiased by the opinions or expressions of others.   This error requires a reversal of the judgment, unless we can say with a fair degree

of certainty that the jury were not influenced in their assessment of damages by the objectionable testimony. The estimate made by the witness, Mosteller, aggregates over $3,500. The defendant called several witnesses who testified on the same subject. C. E. Stoner gave a detailed statement of the number and grades of trees killed and damaged, and a very exact estimate of the values of those killed, and the damages to those injured. His estimate fixed the total amount of damage to apple trees at $1,820.90. I. B. Garrison was not very definite in his statements, but fixed the number of trees killed and damaged at 384, and the damages at $4 and some cents each. He made no estimate on the other items. J. D. Watson, also a witness for the defendant, who appears to have made an examination of the orchard with Mr. Garrison, testified that they estimated 384 apple trees damaged and killed, and, estimated the average damage at $4.50 per tree ; and that the total amount of all the damage, as estimated by them, was something over $2,000. He had lost his memorandum and could not tell the exact sum. One witness for the defendant estimated 120 rods of hedge as damaged to the amount of 38 cents a rod. No witness for the defendant appears to have given an estimate of the damage to the budded-peach, walnut, plum and cherry trees. In answer to the ninth special question submitted, the jury gave the items of damage allowed by them, from which it appears that $1,755 only was allowed for apple trees killed and injured. This was $65.97 less than the estimate of the defendant's witness, Stoner, and $27 more than that stated by Watson. From this it will appear that the allowance was below the average of the estimates of the defendant's

own witnesses. The total amount allowed was $2,140. Stoner, who gave the only detailed estimate made by any witness for the defendant, testified to items aggregating $1,961.57, but omitted several items named by other witnesses. It is evident that the jury in fixing the amount of the plaintiff's recovery accepted the testimony of the witnesses for the defendant, in the main, and that the verdict was not materially influenced by the objectionable testimony. The whole amount allowed is but $140 over $2,000, and the defendant's witnesses allowed something, though we do not know how much, over $2,000. The difference between the verdict and the estimate of Mosteller is so very large that it is evident they did not, to any material extent, accept his estimate, or that of the other witnesses for the plaintiff who merely indorsed his statements. It is clear, therefore, that the objectionable testimony did not work such substantial injury to the defendant as would warrant a reversal of the judgment.

The second instruction asked by the defendant does not correctly state the law, and was rightly refused. The instructions as to the measure of damages, which the Court gave, were correct, and the question discussed with reference to them has already been sufficiently considered while speaking of the sufficiency of the petition.

The action of the Court in striking out a large number of the special questions asked was entirely proper. Most of those which the Court refused to submit were more in the nature of a cross-examination of the jury than of properly framed questions calling for special findings. Seventy-four questions were asked, and, of these, 31 were submitted and answered.

It follows from what has already been said that the Court did not err in rendering judgment on the verdict, and that that judgment must be affirmed.

We are asked by the defendant in error to impose a penalty of five per cent. on the amount of the judgment, under sections 576 and 578 of the Code of Civil Procedure. Whether or not this Court has the power to impose such penalty in any case, we do not deem it necessary to decide now. No practice of the kind indicated in section 578 has ever been followed in this Court, but whether it is authorized or not we think there were reasonable grounds for the proceeding in error in this case.

All the Justices concurring.