—
No. 102,100

MARK EVENSON and JANIS EVENSON, *Appellants*, v.
TIM LILLEY, *Appellee*.

(282 P.3d 610)

Opinion filed August 17, 2012.

*John Terry Moore*, of Moore Martin, LC, of Wichita, argued the cause and was on the brief for appellants.

*Vince P. Wheeler*, of Hite, Fanning & Honeyman, L.L.P., of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: On review of an opinion by the Court of Appeals, Mark and Janis Evenson challenge the calculation of damages, primarily to trees, resulting from a fire on their rural property. Although we disagree with the analysis employed by the district court and by the Court of Appeals, we agree with their ultimate conclusions and affirm.

The Evensons purchased 160 acres of rural property in Greenwood County in 2002. The property contained a number of pine trees and fruit trees, as well as grapevines and other trees. In addition, the property contained a utility building, a pole barn, and a lean-to shed. The Evensons leased part of their property for crops and hay and used the remainder for hunting, camping, and other recreational activities.

Tim Lilley leased pastureland adjacent to the Evensons' property. On April 12, 2006, Lilley started a fire on the pastureland that he intended to be a controlled burn. He lost control of the fire, however, and it spread to the Evensons' property, destroying the outbuildings and around 200 trees. Lilley stipulated that he was at fault for the spread of the fire and the resulting damage.

The Evensons subsequently filed an action alleging negligence and seeking damages in excess of $75,000. The action was tried to the court based on stipulations of fact and the admission of documentary evidence relating to the value of the damaged property. The parties stipulated that the authors of documents would, if called, provide testimony consistent with their written evaluations.

Kip Hoffman, the president of a local nursery, wrote a letter in which he appraised the damages. He carried out his appraisal 20 months after the fire. He noted the presence of an irrigation system for the fruit trees on the property and wire cages around the trunks of the fruit trees to protect them from deer. Much of the land was mowed and maintained as a picnic area. The remainder of the land

was used for hunting and other recreational activities. He then calculated the cost of replacing all the trees lost to the fire at $307,999. This estimate was based on replacing 213 trees with trees of comparable sizes as well as installing and maintaining an irrigation system for the replacement trees.

Sooner Construction provided a proposal for replacing the three destroyed wooden outbuildings with new metal buildings at a cost of $23,500.

David Sundgren, a certified general real estate appraiser, provided an appraisal of total damages to the property of $4,687 plus the cost of removing building debris left from the fire. His appraisal noted the presence of "scattered trees" on the land, approximately 40 acres of crop ground, and 1 acre of farmstead. He observed that water was provided by a stock pond and four water wells that were powered by generators or gas-powered pumps. No electricity or sewage facilities were present on the land. A pole barn built in 1920 that was in fair condition, a wooden lean-to added to the barn in 1935 that was in poor condition, and a wooden utility shed built in 1930 that was in fair condition constituted the structures on the property. Sundgren estimated the total value of the property, including improvements, to be $137,187 before the fire and $132,500 after the fire, taking into account the economic and aesthetic value of the trees, the loss of the structures, and the likely resale value of the property.

Mark Evenson testified that, in his opinion, the property was worth $1,000 an acre before the fire and was worth $700 an acre after the fire. He provided no other testimony or evidence relating to the value of the property as it pertained to the structures or the trees. He also provided no evidence showing that the fruit trees were harvested or used in any commercial fashion.

The district court held that the measure of damages was the difference in the fair market value of the property before and after the fire. The court awarded damages in the amount of $4,687 for the loss in value of the property and $3,000 for the cost of debris removal. The Evensons filed a timely notice of appeal.

The Court of Appeals affirmed in *Evenson v. Lilley*, 43 Kan. App. 2d 573, 228 P.3d 420 (2010), and this court granted review

on the question of whether the damage to the trees and outbuildings was "permanent" or "temporary" in nature.

*Discussion*

This appeal asks this court to rule on how to measure damages for the negligent destruction of trees, as well as outbuildings.

To the extent that the district court relied on documents and stipulated facts, this court exercises de novo review. *In re Trust D of Darby*, 290 Kan. 785, 790, 234 P.3d 793 (2010). The legal conclusion that the district court reached is the subject of this appeal and is subject to de novo review, while certain underlying factual findings not based on stipulations and documentary evidence will be reviewed under a substantial competent evidence standard. See *Progressive Products, Inc. v. Swartz*, 292 Kan. 947, 955, 258 P.3d 969 (2011).

The purpose of awarding damages to an injured party is to make that party whole by restoring the party to his or her position before the injury. In ruling that the measure of damages is the reduction in total property value, the district court relied on PIK Civ. 4th 171.20, which states:

"When damage to real estate is permanent or irreparable, the measure of damages is the difference between the fair and reasonable market value of the property as a whole, including the improvements thereon, immediately before and immediately after the injury.

"Fair and reasonable market value is that amount which would be paid under normal circumstances on the free and open market, in the usual course of dealings, by a willing buyer not forced to buy, and which amount would be acceptable to a willing seller not forced to sell."

See PIK Civ. 4th 171.20, Comment (citing *Williams v. Amoco Production Co.*, 241 Kan. 102, 110, 734 P.2d 1113 [1987] [measure of damages for permanent injury to real estate is difference in fair market value of land before and after injury]).

The Evensons urge this court to measure damages as the cost of restoring the property to its original condition by applying PIK Civ. 4th 171.21, which states:

"When damage to real estate is temporary and of such a character that the property can be restored to its original condition, the measure of damages is the

reasonable cost of repair necessary to restore it to its original condition, . . . but not to exceed its fair and reasonable market value before the injury."

See PIK Civ. 4th 171.21, Comment (citing *Anderson v. Rexroad,* 180 Kan. 505, 306 P.2d 137 [1957] [recovery for temporary damage causing loss of use of property compensated based on restoration costs, not exceeding value of property]).

These instructions reflect the general rules that when property is so damaged that it cannot be restored, *e.g.,* when a house is burned to the ground, the tortfeasor is liable for the amount by which the value of the property has diminished. When, however, the property is damaged in such a way that it can be restored, as when a house suffers smoke and water damage in a fire, the tortfeasor is liable for the costs of restoring the property to its former condition, up to the total value of the property.

Applying these rules to fire-damaged trees is problematic. Is it the loss of the tree that is permanent, or the loss to the real estate? A tree that has burned and is dead is permanently destroyed, but the land on which the tree was located can be restored, either immediately by bringing in a fully grown tree or by planting a sapling. The question of "permanent" versus "temporary" damage is ultimately less helpful than the question of how the trees were used and their intrinsic value to the property. See, *e.g., Mosteller v. Naiman,* 416 N.J. Super. 632, 638, 7 A.3d 803 (2010) (recognizing that quantifying damages for trees is a " 'complex subject' " that "depends 'upon the evidence in the particular case.' ").

One legal encyclopedia explains the use-value formulation this way:

"There is no fixed rule of damages for injury to or destruction of shade and ornamental trees. A court has the discretion to allow the jury to consider more than one measure of damages in order to permit flexibility and achieve a just result. However, a court should not award damages under more than one theory.

"Generally, courts have measured damages by use of the 'before-and-after rule—that is, the difference between the market value of the land immediately before and immediately after the injury to trees or shrubbery. Recovery of the cost of replacing the trees or restoring the premises has been allowed in some circumstances, even though the before-and-after rule may also be recognized, but only if the cost is reasonable in proportion to the damage to the value of the real estate. The value of the trees separate and apart from the land may be an appro-

priate measure of damages, if the trees had such a separate value, the owner elected to sue for conversion of the trees, or it is not clear that the severance affected the value of the land. Some courts have considered the aesthetic loss or the deprivation of the comfort and convenience of trees when awarding damages, even though these losses are not pecuniary.'

"The measure of damages for the destruction or damage of productive trees (such as fruit or nut trees) and crops is generally the difference between the market value of the land immediately before and after the injury. However, this rule is not inflexible, and in a proper case, the plaintiff can recover the value of the crop prior to the injury." 22 Am. Jur. 2d, Damages §§ 276-77, pp. 254-56.

See also Annot., 69 A.L.R.2d 1335, § 10 (measure of damages for destruction or injury to trees and shrubbery):

"The rule of measuring damages for the destruction of or injury to growing timber trees by the amount of the depreciation or diminution in the value of the premises upon which the trees stood has been applied where trees have been burned by a fire negligently set by the defendant, or injured or destroyed by other noxious agencies negligently controlled by the defendant."

The annotation cites numerous state cases that follow that rule. That annotation contrasts with 95 A.L.R.3d 508 (measure of damages for injury to or destruction of shade or ornamental tree or shrub). That annotation notes that when damages have been sought for the destruction of or injury to shade or ornamental trees or shrubs, courts have applied various measures, and, although none of them are rigid and inflexible formulas, courts have generally held that ordinarily the measure of damages is the resulting depreciation in the value of the land on which the trees or shrubs stood. "In explaining their adherence to this view, the courts typically reason that such trees are ordinarily not marketable commodities whose value can thus be measured, but that their value principally inheres in what they impart to the realty on which they stand." 95 A.L.R. 3d 508, § 2.

This flexible approach is sensible. If, for example, trees were going to be harvested for lumber, then the income lost from the sale of the trees might be the appropriate measure of damages. See 2A Speiser, Krause, & Gans, The American Law of Torts § 8:38, pp. 160-61 (2009). If a tree has a specific, unique value, then the replacement cost of the tree may be the proper measure of damages. See, *e.g.*, *Farny v. Bestfield Builders, Inc.*, 391 A.2d 212,

214 (Del. Super. 1978) (damages could be based on replacement costs of trees having special ornamental or sound-screening qualities, but jury might also be instructed that if replacement costs are disproportionate to damage inflicted, better value is impact of the loss on value of land as a whole); *Fiske v. Moczik*, 329 So. 2d 35, 38 (Fla. Dist. App. 1976) (removal of unique and valuable palm trees from residential property required replacement-cost damages).

These cases, however, represent unusual circumstances and reflect an exception to the general rule that the value of destroyed trees is measured primarily by the value that those trees had to the surrounding real estate. The exception requires a showing that the trees have a special, inherent value or are essential to the value of the property as a whole, such that they might require replacement if damaged—*i.e.*, when they screen out wind and noise, produce income, or have ornamental value.

In other situations, courts generally look to the value of the property as a whole before and after the injury. In *Hardie v. Mistriel*, 133 Conn. App. 572, 36 A.3d 261 (2012), for example, the court reversed the district court's reliance on replacement costs as the measure of damages and remanded for imposition of nominal damages for trespass. The court noted:

> "The only evidence submitted by the plaintiff as to the measure of damages was the testimony of Grant Putnam, a landscape contract designer, who testified as to the cost of replacing the trees that the defendant had removed. Replacement value alone is not sufficient. See [*Palmieri v. Cirino*, 90 Conn. App. 841, 851, 880 A.2d 172 (2005)], (court's award of damages for removal of trees improper where record contained no evidence regarding diminution in property value or value of trees separate from land but only contained evidence of replacement value)." 133 Conn. App. at 576.

Kansas has historically followed a rule that the value of trees destroyed by fire is a question for the jury, and the jury may be instructed under various, and possibly conflicting, valuation theories. See, *e.g.*, *Railway Co. v. Lycan*, 57 Kan. 635, 641-42, 47 Pac. 526 (1897) (where a building or a tree is destroyed by a wrongdoer, best measure of damages is value of thing destroyed as part of the realty, and value of thing destroyed ordinarily is measure of dam-

ages; but if injury to the realty is less than value of thing destroyed, plaintiff's recovery is limited to actual diminution in value of the realty); see also *Railway Co. v. McDowell*, 78 Kan. 686, 687, 98 Pac. 201 (1908) (defendant must be permitted to show fire caused no depreciation in value of land); *Railway Co. v. Mosher*, 76 Kan. 599, 602, 92 Pac. 554 (1907) (trees had no independent market value but could be valued as part of land on which they grew); *Railroad Co. v. Noland*, 75 Kan. 691, Syl. ¶ 4, 90 Pac. 273 (1907) (jury should be instructed on both independent value of trees and value of trees to land before and after fire); *Railway Co. v. Geiser*, 68 Kan. 281, Syl. ¶ 3, 75 Pac. 68 (1904) (either of two methods may be adopted to ascertain damage caused to fruit trees: their distinct value as part of land, or difference in value of land before and after destruction; both valuations may properly be given to jury).

When trees have a distinct value as an appurtenance to the land, however, such as the fruit trees in an orchard, Kansas courts have held that the specific value of the trees is "the most satisfactory method of determining the extent of the loss." *Barker v. Railway Co.*, 94 Kan. 61, 65, 145 Pac. 829 (1915); see also *Lycan*, 57 Kan. 635, Syl. ¶ 3 ("It is only where the damages to one part of the land affect other parts, and are incapable of more definite and direct proof, that the evidence is necessarily confined to proof of the value of the whole tract before and after the injury, though the actual damages can never, in any case, exceed the difference between such values.").

These and other similar cases do not provide a clear and universal rule for measuring damages for the destruction of trees. They instead illustrate the wisdom of the general rule that damage to trees is to be evaluated in light of the loss of value to the entire property, subject to an explicit showing of a quality that makes the damaged trees unique, either in terms of intrinsic value or revenue-producing value.

We conclude that the dichotomy of "temporary" versus "permanent" injury on which the district court relied is inappropriate for measuring the value of trees. It was therefore error for the district court and the Court of Appeals to rely on either of the two

PIK instructions, even though the parties advocated adopting one or the other.

It was not, however, error for the district court to base damages on the diminution of the value of the real property. Such a measure is explicitly supported by Kansas caselaw and is the most widely applied rule in other jurisdictions.

If the Evensons had introduced evidence that their trees had any value independent of their value to the land, such as loss of income from fruit trees or the sentimental value of particular trees, then it might have been error for the district court to refuse to consider any other measures of damages. In addition to the loss of value to the land, the court might then have considered other measures of damages, such as aesthetic loss, loss of income production, or even replacement costs.

The Evensons made little showing that the trees had any value independent of their value to the land. It is true that Mark Evenson testified that his family used the land recreationally for picnicking and hunting, but he proffered no showing that the trees were important to those activities or that the enjoyment of those activities was reduced in any substantial way by the loss of trees in general or the loss of particular trees. He provided some speculative testimony that he might someday build a residence on the land, despite the lack of electricity, water, or sewage facilities, but he did not attempt to show that the damaged trees would have improved the value of such a residence.

The Evensons urge this court to follow what they call a "modern" trend in the law—to allow damages for replacing the trees. But this is not really a modern trend; rather, it is an exception to a general rule of valuation that recognizes that, in special cases, certain trees or certain uses of trees may require replacement in order to make the injured party whole. The Evensons have not attempted to prove that their various pine and fruit trees, apparently growing randomly on their property and not subject to any organized harvesting, were of such a unique character that they required replacement in order to make the Evensons whole again.

The Evensons also contend that the district court erroneously calculated the damages for the destroyed outbuildings. They pre-

sented evidence to the district court showing how much it would cost to build structures representing significant upgrades in quality to the ones that were destroyed. Lilley, on the other hand, presented substantial competent evidence of the actual depreciated value of the destroyed buildings, all of which were many decades old and were in fair to poor condition. The latter is the correct measure of damages.

The ordinary measure of damages to real property is the difference in value immediately before and after the damage and, in the event of total destruction, the fair market value at the time of the destruction. See *Ettus v. Orkin Exterminating Co.*, 233 Kan. 555, 561, 665 P.2d 730 (1983); *Kennedy v. Heat and Power Co.*, 103 Kan. 651, Syl. ¶ 1, 175 Pac. 977 (1918).

The theory of damages that the Evensons advocate looks suspiciously like a windfall gain for them. Their property lost little of its appraised value, but, under their theory, they would receive an award roughly equal to the entire value of the property. The basic principle of damages is to make a party whole by putting it back in the position that it was in before the injury, not to grant the party a windfall profit. *State ex rel. Stephan v. Woldfenbarger & McCulley, P.A.*, 236 Kan. 183, 189, 690 P.2d 380 (1984).

The district court and the Court of Appeals incorrectly attempted to superimpose principles of temporary and permanent damages on the facts of this case. Their conclusions were correct, however, and the district court did not err in relying on a diminished-value calculation of property loss.

Affirmed.