NOT DESIGNATED FOR PUBLICATION

No. 113,197

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ABNER & JANIESE DELAY,
*Appellees*,

v.

GREAT PLAINS CUSTOM APPLICATION, INC.,
and BAILEY FLYING SERVICE, INC.,
*Appellants*.


MEMORANDUM OPINION


Appeal from Morton District Court; LINDA P. GILMORE, judge. Opinion filed July 1, 2016. Affirmed.


*James C. Dodge*, of Sharp McQueen, P.A., of Liberal, for appellants.


*Clint W. Floyd*, of Floyd Law Office, LLC, of Johnson, for appellees.


Before MALONE, C.J., LEBEN, J., and JOHNSON, S.J.


*Per Curiam*:  Mathew and Lisa Thomas filed a lawsuit against Great Plains Custom Application, Inc., and Bailey Flying Service, Inc. (collectively Great Plains), alleging negligent application of herbicides that drifted onto the property where they lived, which caused damage to their trees. During the proceedings, the district court joined Abner and Janiese Delay, the property owners, as plaintiffs and dismissed the Thomases for lack of standing. After a trial, a jury found Great Plains liable and awarded the Delays $20,000 in damages. Great Plains appeals, contending that the district court erred when it (1) allowed joinder of the Delays as plaintiffs, (2) did not require the

1

Delays to present expert testimony on causation, and (3) improperly instructed the jury on the inherent value of trees. Finding no error, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Abner and Janiese Delay own 80 acres of property in Morton County, Kansas. When Abner purchased the property in the late 1980s, there were very few trees on the property, just a "few practically dead elm trees." In approximately 1991, the Delays' daughter and son-in-law, Lisa and Mathew Thomas, moved onto the land. The Delays still owned and paid taxes on the property, and the Thomases paid no rent for living there.

Within a couple years after the Thomases moved onto the property, Lisa and Janiese purchased some trees and planted them on the north and west sides of the home as a windbreak. Over the years, Lisa ordered and planted additional trees—lacebark elm, Schumach, cottonwood, Russian olives, and fruit trees, including cherry, peach, and pear trees—on the south side of the home as well. Those trees were intended to cut down on dust and noise from a nearby road and to increase privacy. Lisa planted trees every year thereafter and estimated that by 2009 she had planted over 175 trees on the property.

On May 21, 2009, as Mathew left for work at about 7:20 a.m., he saw a spray rig loading up at a neighbor's house approximately 1 mile east of the his home. At approximately 8 a.m., Lisa was doing yard work and she noticed that their neighbor's land was being sprayed—land that was across the road from the Thomas' house. When she returned home that evening, Lisa noticed that the ground south of her home had been sprayed and she could smell a chemical odor in the air. Mathew also smelled a chemical odor and saw a rig spraying about 1/2 mile south of their home between 7:30 and 8 p.m. Mathew asserted the wind at that point was from the south at 30 to 35 miles per hour.

On May 23, 2009, at about 9:30 a.m., Lisa saw the same rig spraying again on land south and west of her home. At that point, Lisa recorded the wind speed at 9 miles per hour with gusts of 14 miles per hour out of the south and southwest. Lisa took photographs of the spray rig and could again faintly smell a chemical odor she believed was the spray. Around the same time, Mathew saw a spray trailer sitting at their neighbor's house; the truck had "Bailey Flying Service" (Bailey) written on it. That afternoon, the wind speed increased to include 16-mile-per-hour gusts, and Lisa began to see damage to the trees on the property.

On May 27, 2009, Lisa took photographs of the damage to the trees. Mathew also noticed the trees' leaves were drawing up and curling, so he called the Kansas Department of Agriculture (KDOA) to report the damage. In addition, Mathew called Frank Swan, an extension agent for Kansas State University Research and Extension in Stanton County, who came to the property and evaluated the damage to the trees. After completing a K-State Ornamental Tree and Shrub Analysis form, a standardized form used to assess value to lost plant material, trees, and shrubs, Swan recommended replacing 70 of the trees at an estimated cost of $66,106.

In response to Mathew's call to the KDOA, Gene McFall, an environmental scientist and compliance investigator, came to the property on May 29, 2009. McFall interviewed Mathew and Lisa to complete a KDOA damage complaint form. He inspected the trees and found that the leaves were cupping and curling, which "can be a result of exposure to a growth-regulator-type of herbicide" such as dimethylamine salt of 2,4-dichlorophenoxyacetic acid—commonly called "2,4-D"—and dimethylamine salt of dicamba (3,6-dichloro-o-anisic acid)—commonly called "dicamba." McFall collected samples from different trees on the property and sent them to the KDOA for testing to determine whether those herbicides were present; the lab found traces of both.

3

During his investigation, McFall learned that Great Plains and its supplier, Bailey, regularly applied Rifle-D, an herbicide that contains both 2,4-D and Dicamba. Rifle-D's label restricts its use when wind speeds exceed 15 miles per hour. At McFall's request, a Great Plains employee sent McFall records showing that Great Plains had applied Rifle-D on the Thomases' neighbor's property on May 21 and May 23, 2009. Most of the land sprayed was within 1 mile of the property on which the Thomases lived. Great Plains' records showed wind out of the south, southwest at speeds of 3-5 miles per hour. But when McFall obtained additional weather data from the Kansas State University Weather Library, it indicated that wind speeds on the days in question exceeded 15 miles per hour at times. In his final report, McFall stated that "[m]aterial from these applications [by Great Plains] may have drifted on to Thomas' [*sic*] property."

McFall also investigated other spray applications in the area in May 2009. Skyland Grain (Skyland) and the Morton County Noxious Weed Department (Morton County) had sprayed in the general area on May 6 and May 28, respectively. Skyland sprayed Rifle-D on land adjacent to the Thomases' house and Morton County sprayed 2,4-D in a ditch along a county road near the Thomases' house. Although Great Plains had sprayed a chemical that could be tested for and which neither Morton County nor Skyland had sprayed, McFall did not request testing for that chemical.

As a result of the damage to the trees and McFall's investigation, the Thomases filed a petition in Morton County District Court on May 27, 2011, alleging that Great Plains and Skyland were negligent in their spraying of herbicides and pesticides on and around the Thomases' property, causing permanent damage to the Thomases' vegetation. They also alleged that Bailey was jointly and severally liable for the damage because it owned and operated the spray rig and had performed the spray work for Great Plains. The Thomases sought money damages in excess of $25,000. The claims against Skyland were later dismissed with prejudice by agreement of the parties.

4

The case proceeded with discovery and, at a status conference on August 19, 2013, the Thomases informed the district court that they had been unable to obtain an expert report from McFall, who was their designated expert witness, but they anticipated being able to file one soon. Because the district court previously had advised the Thomases to file the expert report on or before August 2, 2013, the district court ruled that McFall was "not eligible to testify as an expert regarding any matters not currently contained in a report previously submitted to Defendants."

On January 31, 2014, Great Plains filed a motion to dismiss under K.S.A. 60-212(b)(6) for failure to state a claim upon which relief could be granted, arguing that the Thomases had no legal interest in the trees. Great Plains pointed out that the Delays owned the real property on which the trees were located, they paid the taxes on the property, there was no lease or rental agreement between the Delays and the Thomases, and the trees were part of the Delays' real property. The Thomases filed a response arguing that the motion to dismiss was untimely and that they planned on filing a motion for joinder, which would "alleviate the issue." On February 28, 2014, the Thomases filed a motion requesting joinder of the Delays as plaintiffs.

The district court held a hearing on March 11, 2014, and heard argument on the motion to dismiss and the motion for joinder. At the end of the hearing, the district court joined the Delays as plaintiffs and dismissed the Thomases for lack of standing. Great Plains filed a motion to reconsider and the district court ultimately denied the motion. On May 12, 2014, the Delays filed an amended petition alleging negligence by Great Plains.

The district court held a 3-day jury trial beginning on December 9, 2014. At the beginning of the trial, prior to any testimony, the parties agreed to stipulate to the admission of a large three-ring binder with over 450 pages of exhibits. Janiese and Abner Delay both testified, as did Mathew and Lisa Thomas. McFall and Swan also testified about their involvement in the post-damage investigation and evaluation of the trees.

5

After the Delays rested their case, Great Plains moved for judgment as a matter of law, arguing that the Delays had failed to present expert testimony that Great Plains' spraying caused the damage in question. The district court denied the motion. Great Plains then called Michael Hobbiebrunken to testify. Hobbiebrunken, who in May 2009 leased and farmed the ground adjacent to the Delays', testified that he had hired Bailey to spray his land. He had instructed Bailey not to spray the Delays' land and, to the best of his knowledge, Bailey had not sprayed any acreage other than his property.

Great Plains also presented testimony from Chad Gilliland, a pesticide division manager for Arbor Masters Tree and Landscape in Kansas City. Gilliland had gone to the Delays' property in November 2012 to evaluate and document the trees and the ground surrounding the trees. Gilliland testified that by that time many of the damaged trees had been removed from the ground and thrown into a large pile. Acknowledging that tree valuation is very subjective, Gilliland concluded that although some of the damage he saw on the trees came from herbicides, that damage had been exacerbated by drought stress to the trees. Gilliland set the cost of replacing the trees at $30,262.50.

At the close of the evidence, Great Plains again asked the district court to reconsider its decision to join the Delays as plaintiffs. Great Plains also requested judgment as a matter of law, asserting that the Delays had presented no evidence that a breach of duty had caused the damage to the trees. The district court denied both motions. The district court instructed the jury to compare the potential fault of Great Plains, Bailey, Skyland, and Morton County. After deliberating, the jury found Great Plains 50 percent at fault and Bailey 50 percent at fault and awarded the Delays $20,000 in damages. Great Plains timely appealed the district court's judgment. The Delays have filed no cross-appeal.

Great Plains first argues that the district court erred by joining the Delays as plaintiffs. To fully understand Great Plains' argument, additional facts are necessary. As stated above, on January 31, 2014, Great Plains filed a motion to dismiss under K.S.A. 60-212(b)(6), arguing that the Thomases had no legal interest in the damaged trees. The Delays owned and paid the taxes on the property, there was no lease or rental agreement between the Delays and the Thomases, and the trees were part of the Delays' real property. Therefore, Great Plains asserted that the Thomases had no claim to the trees and had failed to state a claim upon which relief could be granted.

The Thomases filed a response to the motion, stating that they planned on filing a motion for joinder, which they claimed would "alleviate the issue." They subsequently filed a motion requesting joinder of the Delays as plaintiffs. The district court held a hearing on March 11, 2014, and heard arguments on both motions. The district court granted the motion to join the Delays as plaintiffs and dismissed the Thomases from the case for lack of standing.

Great Plains filed a motion to reconsider the joinder, arguing that joinder was incorrect under the circumstances. Great Plains asserted that substitution of the Delays would have been more appropriate than joinder, but also would have been an error because Great Plains did not know of the Delays' existence as owners until after the statute of limitations on the alleged negligence claim had expired. The district court held a hearing on the motion to reconsider, but ultimately denied it, pointing out that Great Plains had known by deposition in February 2013 that the Delays owned the property in question. Great Plains raised this issue again at the jury instruction conference during the trial, but the district court declined to revisit the issue.

On appeal, Great Plains makes the same arguments as it made in district court. First, it contends that joinder was inappropriate under the statutes governing joinder. Second, Great Plains contends that substitution, although the correct procedural mechanism to replace the Thomases with the Delays, also would have been improper because the statute of limitations had run and the Delays were prevented from bringing a negligence claim. In response, the Delays argue that the joinder was appropriate.

As both parties agree, Kansas appellate courts reviewing a district court's decision regarding joinder of a party finds error only if the district court abused its discretion. See *State ex rel. Graeber v. Marion County Landfill, Inc.*, 276 Kan. 328, 352, 76 P.3d 1000 (2003). "A district court abuses its discretion if no reasonable person would take the view adopted by the district court, the decision is based on an error of law, or if the decision was based upon an error of fact. [Citation omitted.]" *Kansas City Power & Light Co. v. Strong*, 302 Kan. 712, 729, 356 P.3d 1064 (2015). In addition, where resolving this issue requires statutory interpretation, this court reviews de novo. See 302 Kan. at 723.

Initially, we believe that whether the district court joined the Delays as plaintiffs or substituted them as parties is of no significant difference. K.S.A. 2015 Supp. 60-225 addresses substitution of parties. That statute is applicable when a party is no longer able to remain in a case due to death or incapacity. That is not the situation we have here.

The district court stated that it *joined* the Delays as plaintiffs pursuant to K.S.A. 2015 Supp. 60-220. Under subsection (a)(1),

> "Persons may join in one action as plaintiffs if:
> "(A) They assert any right to relief jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences; and
> "(B) any question of law or fact common to all plaintiffs will arise in the action."

8

In addition, the district court cited K.S.A. 2015 Supp. 60-221, which states in part: "Misjoinder of parties is not a ground for dismissing an action. On motion, or on its own, the court may at any time, on just terms, add or drop a party."

Great Plains contends that joinder was improper because the Delays did not assert any right to relief as required by K.S.A. 2015 Supp. 60-220(a)(1)(A). The record on appeal contradicts this claim. First, both the response to Great Plains' motion to dismiss and the accompanying motion for joinder assert that joining the Delays as plaintiffs would allow "the relief sought in the Petition [to] be accredited to the proper party." Second, although the oral argument on joining the Delays was somewhat sparse, it was clear that the Delays claimed a right to relief as the property owners. Great Plains argued that the Thomases could not claim damages as they were not owners of the land and when the trees were planted, the trees became part of the Delays' real property. In response, the attorney representing the Thomases and the Delays identified the Delays as the "rightful owners of the property" and stated that joining the Delays as plaintiffs would "fix the situation" caused by the Thomases' lack of standing to bring the claim.

Clearly, the Delays wanted to join the lawsuit because they believed their status as the landowners entitled them to compensation for the damage to trees planted on their land. There was no question at the oral argument on the motion of the basis for the Delays' interest in the lawsuit; both parties clearly understood the Delays were asserting a right to relief as the landowners. Thus, Great Plains' claim that the joinder was improper because the Delays did not satisfy the requirements of K.S.A. 2015 Supp. 60-220 fails.

Although the district court relied on K.S.A. 2015 Supp. 60-220(a)(1) as authority to join the Delays as plaintiffs, we find that K.S.A. 2015 Supp. 60-217(a)(3) also is instructive if not controlling on the issue before the court. This statute provides:

9

"The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join or be substituted into the action. After ratification, joinder or substitution, the action proceeds as if it had been originally commenced by the real party in interest."

This statute is directly applicable to the situation at hand. K.S.A. 2015 Supp. 60-217(a)(3) allows joinder of the real party in interest and states that a court may not dismiss an action for failure to prosecute in the name of the real party in interest until reasonable time is allowed for the real party in interest to join in the action. This is precisely the situation we have here. Although the district court did not cite K.S.A. 2015 Supp. 60-217(a)(3) in reaching its decision, it followed the statutory commands therein.

Great Plains argues that even if joinder was the correct procedural mechanism to replace the Thomases with the Delays, the district court erred by allowing joinder in this case outside the statute of limitations. As Great Plains points out, the Delays were not joined until March 11, 2014, well past the 2-year statute of limitations for a negligence claim. See K.S.A. 60-513(a)(4) and (b) (setting statute of limitations). In response, the Delays argue that joinder was proper because Great Plains waited to file the motion to dismiss until well after learning that the Delays owned the land in question.

The record reflects that after Great Plains initially learned that the Delays owned the land rather than the Thomases, Great Plains waited approximately 13 months to file its motion to dismiss. The district court appeared to rely on this delay, in part, in denying Great Plains' motion to dismiss. However, the fact remains that by the time Great Plains learned through deposition that the Delays owned the land, the statute of limitations for a negligence claim already had expired. The Delays fail to cite any legal authority for the proposition that Great Plains' delay somehow rendered the statute of limitations moot or demonstrated Great Plains' acquiescence to the joinder, which would bar the argument Great Plains now raises on appeal. Failure to support an assertion with pertinent legal

10

authority or show why it is sound despite a lack of authority, is akin to failing to brief an issue; an issue not briefed is deemed abandoned. See *Rogers v. ALT-A&M JV*, 52 Kan. App. 2d 213, 217, 364 P.3d 1206 (2015).

In rejecting Great Plains' statute of limitations argument, the district court also cited K.S.A. 2015 Supp. 60-221 which states in part: "Misjoinder of parties is not a ground for dismissing an action. On motion, or on its own, the court may *at any time*, on just terms, add or drop a party." (Emphasis added.) We agree with the district court that the plain language of this statute authorizes a district court to join a party at any time, arguably circumventing a bar caused by the applicable statute of limitations.

Moreover, as we have previously discussed, K.S.A. 2015 Supp. 60-217(a)(3) allows the joinder of the real party in interest and states that the court may not dismiss an action for failure to prosecute in the name of the real party in interest until reasonable time is allowed for the real party in interest to join in the action. The last sentence of this statutory subsection states: "After ratification, joinder or substitution, the action proceeds as if it had been originally commenced by the real party in interest." The plain language of this statutory directive provides further authority that the real party in interest may be joined in a lawsuit even after the applicable statute of limitations has expired.

Great Plains also argues that the district court erred by allowing the Delays to be joined as plaintiffs outside the statute of limitations because the Delays failed to establish that their claims would "relate back" to the date of the original petition pursuant to K.S.A. 2015 Supp. 60-215(c)(2). Great Plains cites and relies upon *Leachman v. Beech Aircraft Corp.*, 694 F.2d 1301 (D.C. Cir. 1982), a case construing Federal Rule of Civil Procedure 15(c)(2), which is substantively similar to K.S.A. 2015 Supp. 60-215(c)(2). K.S.A. 2015 Supp. 60-215(c)(2) provides as follows:

11

"(c) An amendment to a pleading relates back to the date of the original pleading when:

"(1) The law that provides the applicable statute of limitations allows relation back;

"(2) the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out, or attempted to be set out, in the original pleading; or"

To the extent that K.S.A. 2015 Supp. 60-215(c)(2) is applicable to the district court's decision to allow the Delays to be joined as plaintiffs, we find that the Delays satisfied the requirements of the statute. The Delays' claims against Great Plains clearly arose out of the same conduct, transaction, or occurrence that was alleged in the Thomases' original petition. Great Plains does not contend that the Thomases' original petition was filed outside the statute of limitations. Thus, to the extent that the Delays' claims related back to the date of the original petition, the claims were not barred by the applicable statute of limitations.

In sum, the district court's decision to allow the Delays to be joined as plaintiffs, even after the statute of limitations had expired, comports with the statutes governing the rules of civil procedure in Kansas. Thus, we conclude that the district court did not err in allowing the Delays to be joined as plaintiffs.

EXPERT TESTIMONY ON CAUSATION

Next, Great Plains argues that the district court erred by "not grant[ing] judgment to the defendants because the plaintiffs failed to use expert testimony showing the pesticide applied in fact drifted onto their property." Great Plains challenges the district court's denial of its mid-trial motion for judgment as a matter of law, in which Great Plains argued that the Delays had failed to present required evidence that Great Plains' spraying had caused the damage in question. Great Plains' argument on this issue is not entirely clear and appears to involve multiple elements of a negligence claim. But when

12

Great Plains' appellate argument on this issue is read as a whole, it appears to focus on the causation element, arguing that a layman would not be able to determine whether Great Plains' actions caused the spray to drift and damage the trees; therefore the Delays were required to present expert testimony on causation.

The parties both assert that the proper standard of review of this issue is abuse of discretion, which Great Plains correctly notes is utilized when reviewing the qualifications of an expert witness and the admissibility of expert testimony. See *Manhattan Ice & Cold Storage v. City of Manhattan*, 294 Kan. 60, 70, 274 P.3d 609 (2012). But at no point has Great Plains argued that the district court erred by admitting or excluding expert evidence or by accepting or rejecting a proposed expert witness. Instead, Great Plains contends that the district court erred by *not requiring* the Delays to present expert testimony. Therefore, once again, it appears that Great Plains is challenging the denial of its motion for judgment as a matter of law, which is not reviewed for abuse of discretion.

> """"When ruling on a motion for [judgment as a matter of law], the trial court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought. Where reasonable minds could reach different conclusions based on the evidence, the motion must be denied. A similar analysis must be applied by an appellate court when reviewing the grant or denial of a motion for [judgment as a matter of law].'" [Citations omitted.]""" *Bussman v. Safeco Inc. Co. of America*, 298 Kan. 700, 706-07, 317 P.3d 70 (2014).

Generally, expert testimony may be required if the theory of a negligence claim depends on breach of a standard of care particular to a certain profession or if causation is so complex that special skills or knowledge are necessary to fully comprehend the chain of events. See *Tudor v. Wheatland Nursing*, 42 Kan. App. 2d 624, 632-33, 214 P.3d 1217 (2009), (claim of a nursing home's negligence required expert testimony to establish the standard of care in the context of the patient's "particular conditions and symptoms"), *rev.*

13

*denied* 290 Kan. 1105 (2010); see also *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 625, 345 P.3d 281 (2015) (expert medical opinion testimony was required to show there was a treatment approach that would have prevented plaintiff's death).

As Great Plains acknowledges, though, "[a]n exception to this requirement arises in cases where the lack of reasonable care or the existence of causation is apparent to the average layman from common knowledge or experience." *Watkins v. McAllister*, 30 Kan. App. 2d 1255, 1258, 59 P.3d 1021 (2002) (citing *Hare v. Wendler*, 263 Kan. 434, 440, 442, 949 P.2d 1141 [1997]). Under this exception, even assuming that herbicide application is a profession that might require expert testimony to establish the appropriate standard of care in a negligence claim, expert testimony is not required where a lack of reasonable care or the determination of causation is apparent to an average person.

Our Supreme Court has defined the proximate cause element in a negligence case as "a cause that 'in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act.' [Citation omitted.]" See *Drouhard-Nordhus*, 301 Kan. at 623. Here, there was no dispute at trial that Great Plains sprayed herbicide on land adjacent to the Delays' on May 21 and 23, 2009. Regarding whether that spray drifted onto the Delays' property and caused damage to the trees in question, Lisa testified that she noticed on May 21, 2009, that the ground south of her home had been sprayed and she smelled a strong chemical odor. She saw the same rig spraying south and west of her home on May 23 and could again faintly smell a chemical odor. Lisa further stated that by 2 p.m. on May 23rd, the wind was gusting up to 16 miles per hour, she could smell chemicals, and she began to see damage to her trees.

McFall testified that on May 29, 2009, he saw damage to the trees consistent with damage resulting from exposure to herbicides like those applied by Great Plains. Samples from the trees showed the presence of those herbicides. McFall further testified that

14

weather data he obtained from the Kansas State University Weather Library indicated that wind speeds exceeded 15 miles per hour during Great Plains' application of the herbicide and that the herbicide's label restricted its use at that wind speed.

Despite Great Plains' assertion otherwise, determining the existence of causation in this case does not require special skills or knowledge. The theory of causation was that Great Plains sprayed herbicides at a time when their use should have been restricted due to wind speed, and the herbicides drifted onto the Delays' property and damaged the trees. Armed with knowledge of wind speed, the location of the spraying, the types of herbicides sprayed, and the type of the damage inflicted on the Delays' trees, it does not require more than common knowledge and experience to conclude whether the Delays proved causation. Resolving all facts and inferences in the Delays' favor, the district court did not err in concluding that expert testimony was not required to prove causation and in denying Great Plains' motion for judgment as a matter of law.

JURY INSTRUCTION ON THE INHERENT VALUE OF TREES

Finally, Great Plains argues that the district court erred in the manner in which it instructed the jury on the inherent value of trees. Specifically, Great Plains challenges the following jury instruction:

> "If you determine the trees have a special, inherent value to the owners, Abner & Janiese Delay, such as noise reduction, windbreak, aesthetic value or shade, the replacement cost may be a proper measure of damages. However, the special, inherent value of the trees to Lisa and Mathew Thomas, should not be considered in an award of damages as they do not own the property.
> "If you determine replacement costs to Abner & Janiese Delay are a proper measure of damages, replacement costs cannot be disproportionate to the loss on the value of the land as a whole."

15

Great Plains argues that the instruction was slanted in favor of the plaintiffs because it provided examples of the inherent value of trees that were particular to this case. Moreover, Great Plains argues that there was no evidence presented to the jury that the trees had any special inherent value to the Delays or that the trees were essential to the value of the property as a whole. The Delays disagree, arguing that the instruction was proper and, even if it was error, any error was harmless.

"When analyzing jury instruction issues, we (1) determine whether the issue can be reviewed, (2) determine whether any error occurred, and (3) finally determine whether the error requires reversal. [Citation omitted.]

"The first and third steps are interrelated in that whether a party has preserved an issue for review will impact the standard by which we determine whether any error is reversible. [Citation omitted.]" *Siruta v. Siruta*, 301 Kan. 757, 771, 348 P.3d 549 (2015),

There is no fixed rule of damages for negligent injury to or destruction of trees. Generally, in a negligence action, courts should measure damages to trees by utilizing the "before and after rule," *i.e.*, the difference between the market value of the land immediately before and immediately after the injury to the trees. See *Evenson v. Lilley*, 295 Kan. 43, Syl. ¶ 2, 282 P.3d 610 (2012). However, when there is evidence that the damaged trees have a special inherent value or are essential to the value of the property as a whole, such that they might require replacement if damaged, then the replacement cost of the trees may be the appropriate measure of damages in a tort action. 295 Kan. at 49.

In the district court, Great Plains objected to the district court's jury instruction by stating: "[We object o]nly insofar as the first sentence where you state in the instruction, Your Honor, '. . . such as noise reduction, windbreak, esthetic value or shade.'" Great Plains cited an unpublished Kansas Court of Appeals opinion that held a "'[c]ourt should not single out a particular theory or circumstance and give it undue emphasis'" and argued that giving examples of specific ways that trees could have inherent value was improper based on that case. The district court overruled the objection. Thus, to the

16

extent that Great Plains argues on appeal that the instruction gave undue emphasis to certain examples of the inherent value of trees, the issue is preserved for appeal.

Jury instructions must be both legally appropriate and factually supported. *Siruta*, 301 Kan. at 775. Great Plains states that it challenges only the legal propriety of the district court's instruction. "We use an unlimited review to determine whether an instruction was legally appropriate"; in doing so, this court "'review[s] [] the instruction to see whether it properly and fairly stated the law as applied to the facts of the case and could not have reasonably misled the jury'" when the instruction is considered in the context of all the jury instructions as a whole. See 301 Kan. at 775.

Great Plains argues that by emphasizing "noise reduction, windbreak, aesthetic value or shade" as examples of the inherent value of trees, the jury instruction was slanted in favor of the plaintiffs because it provided examples of the inherent value of trees that were particular to this case. Great Plains cites *Schwartz v. Western Power & Gas Co., Inc.*, 208 Kan. 844, 854, 494 P.2d 1113 (1972), for the proposition that in instructing a jury "a court should not single out a particular theory or circumstance and give it undue emphasis, even though the requested instruction correctly states the law."

Here, the jury instruction given by the district court stated in relevant part:  "If you determine the trees have a special, inherent value to the owners, Abner & Janiese Delay, such as noise reduction, windbreak, aesthetic value or shade, the replacement cost may be a proper measure of damages." The examples of the inherent value of trees given in the instruction may have correlated with evidence presented at trial, but they are not examples limited solely to the circumstances of this case. See *Lilley*, 295 Kan. at 48-49 (listing screening out wind and noise, income production, and ornamental or aesthetic value as examples of special, inherent value of trees). The reference to "noise reduction, windbreak, aesthetic value or shade" was not so slanted in favor of the plaintiffs that it rendered the instruction improper by emphasizing their theory of the case. Thus, we

17

conclude that the instruction given by the district court was legally appropriate and the district court did not err by giving the instruction.

Great Plains also argues on appeal that the district court erred by giving the instruction because no evidence was presented at trial that the trees had any inherent value to the Delays or that they were important to the value of the property as a whole. Because Great Plains did not raise this argument in the district court, this court will only reverse for clear error. See *Siruta*, 301 Kan. at 772. "'"An instruction is clearly erroneous when the reviewing court reaches a firm conviction that if the trial error had not occurred, there was a real possibility that the jury would have returned a different verdict."' [Citations omitted.]" 301 Kan. at 772.

We agree with Great Plains that there was no testimony at trial as to the inherent value of the trees to the Delays. But as the Delays point out, such evidence can be found in the exhibits stipulated by the parties as evidence. For example, Exhibit O, admitted by the district court at the beginning of the trial, was a transcript of Abner's deposition, taken in February 2013. At that deposition, Abner stated that "[a]nybody out in this country that tries to develop their place likes to have trees" because trees are a commodity, adding beauty, value, and a wind break for property and animals. Abner also stated that trees are assets because they give shade, protect livestock, and add value to property.

Exhibit P, also admitted into evidence at trial, was a deposition of Janiese, taken in July 2014. At the deposition, Janiese stated that the damaged trees south of the house had been planted for privacy and to screen animals and the house from dust from a nearby road. Janiese also asserted her general belief that "out in this country, my opinion is trees are valuable." In addition, she commented on the aesthetic value of the trees, stating that they made "the place look better" and that they provided shade for the animals.

18

Considering all the evidence admitted at trial, including the written exhibits, there was sufficient evidence to support instructing the jury that it could consider whether the damaged trees had special, inherent value to the Delays. Because the instruction was legally and factually appropriate, we conclude the district court did not err in the manner in which it instructed the jury on the inherent value of trees.

Affirmed.